STACY, C. J., concurring in part and dissenting in part.
BARNHILL and WINBORNE, JJ., join in the opinion of STACY, C. J.
CLARKSON, J., concurring.
The plaintiff sued by her next friend to recover for injuries sustained through the alleged negligence of the defendants. During the trial, the plaintiff took a voluntary nonsuit as to the defendants, Elliott and Oliver. Motion for judgment as of involuntary nonsuit as to the Edna Mills Corporation was allowed on demurrer to the evidence at the conclusion of plaintiff's evidence.
The alleged negligence consisted in digging or causing to be dug, and leaving unprotected and unguarded, a deep sewer ditch leading across the sidewalk of Way Street in a very thickly settled mill village section, which ditch led to and past the porch of the Oliver house and in close proximity thereto. The ditch itself was some three and one-half feet deep, and the drop from the floor of the porch to the bottom of the ditch was eight or ten feet. A large number of children were known to form a part of the population and to frequent the neighborhood premises, visiting and playing in and about the houses and on the Oliver premises contiguous to the ditch. The Evans children and Oliver children had been exchanging visits for some time. The plaintiff, a girl child about four years of age, playing upon the Oliver porch with other children, either fell or was pushed off the porch into the ditch, falling some ten feet into the bottom thereof. Her head struck the "bell" joint of the iron sewer pipe which had been installed and left exposed at the bottom of the excavation. She sustained a fractured skull, received a deep gash over the forehead which injured the eye, and, as the evidence tended to show, was seriously and permanently injured.
The defendant admitted knowledge of the fact that the section was thickly populated, with children residing therein, and that the plaintiff either fell or was pushed into the ditch and received injuries therefrom, but denied its liability or responsibility for the opening of the ditch and plaintiff's injury. Defendant alleged that at the time of plaintiff's injury, it had sold the Oliver house to its then occupants under a contract which required the defendant to "install in said building a sewer line and fixtures," and in pursuance thereof contended that it engaged Jack Elliott (its codefendant), trading as Reidsville Plumbing Company, as an independent contractor to do that job, and concludes that it is *Page 256 
relieved thereby from any responsibility for the manner in which he prosecuted the work, and from all liability for plaintiff's injury.
The plaintiff's evidence with respect to the populous and much frequented character of the neighborhood, and other conditions about the Oliver house, and of the conditions brought about by Elliott and existing in and about the premises at the time of the injury, and of the circumstances of the injury, substantially followed the complaint and tended to show negligence on the part of Elliott as the proximate cause of the injury. It also tended to show that the ditch remained open and unprotected for approximately three weeks, and that this condition was in plain view of defendant's office windows, and that officers of the defendant passed the premises frequently and knew or could have known of these conditions. It further tended to show that an officer or officers of the defendant came upon the premises at least twice for the purpose, as defendant contended, of inspection.
In evidence also was the written contract between defendant and Jack Elliott with reference to this work, which was as follows (substituting the Oliver premises for those named in the writing):
"November 4, 1938
"I agree to install plumbing in five dwellings on West Market Street and Piedmont Street for the sum of $70.00 per house or a total of $350.00 for all labor. Rockingham Homes, Inc., to furnish all necessary material and will pay for any taps required. All work to be done in a workmanlike manner, payment to be made upon satisfactory completion of the job.
"ROCKINGHAM HOMES, INC. E. J. ELLIOT W. B. PIPKIN, Sec. Treas."
The following issues were submitted to the jury:
1. Was E. J. (Jack) Elliott, alleged in the pleadings to be trading as the Reidsville Plumbing Co., an independent contractor on the work to be done, and done, on the home of Robert Oliver on Way Street in the City of Reidsville?
2. Was the plaintiff injured by the negligence of the defendant, Rockingham Homes, Incorporated, as alleged in the complaint?
3. What amount, if anything, is the plaintiff entitled to recover of the defendant, Rockingham Homes, Incorporated?
Upon these issues the judge, inter alia, instructed the jury as follows:
"Now, gentlemen of the jury, this paper writing which was offered in evidence and which reads as follows, being defendant's Exhibit No. E, dated November 4, 1938: (see contract set out above) is, and I instruct *Page 257 
you as a matter of law, the creation of a relationship which would make E. J. Elliott, trading as Reidsville Plumbing Company, as alleged in the answer, an independent contractor, and if the defendant, Rockingham Homes, Incorporated, has satisfied you from the evidence and by its greater weight, under the instructions just previously given, that the work to be done there was not of such a type as to lead to the creation of a nuisance, or the maintenance of the open ditch was not of such type as would cause harm and injury and damage to another, and has satisfied you from the evidence and by its greater weight that the exceptions that I will give to you presently under the rules do not apply, then I instruct you, if you are so satisfied, that you will answer that first issue YES. Otherwise, if you are not so satisfied, you will answer it NO."
"So, therefore, gentlemen of the jury, if you find from the evidence and by its greater weight that Jack Elliott, under this issue, one, was an independent contractor and that as such he was not permitting any condition to arise there which of itself would be dangerous in the way of creating a nuisance, or otherwise, or which would come within the exceptions set out, if you are so satisfied or satisfied by the greater weight of the evidence, you would answer the first question YES. If, however, you are not so satisfied, you would answer it NO. If you answer the first question YES, under these instructions, then it would not be necessary for you to answer the remaining questions; that would be an end to the controversy, for you would then have found that he was an independent contractor, that he and he only would be responsible for any alleged negligence which might proximately result in the injury charged in this case and Rockingham Homes, Incorporated, would not be responsible."
He further instructed the jury, in the event they should answer the first issue NO, they should apply the law relating to master and servant and liability of the master for the servant's negligence, which he explained.
The jury answered all the issues favorably to the plaintiff, and from the judgment which ensued, the defendant appealed, assigning error.
Assuming the contract between appellant and its codefendant to be as it appears in defendant's evidence, meagre as it is, we think it must be construed as constituting Elliott an independent contractor. The existence of such a contract, however, was a matter to be proved by defendant. The offices of the jury might be called on in this *Page 258 
respect, whether by separate issue or on appropriate instruction, but the jury could not be allowed to interpret its legal effect. Drake v.Asheville, 194 N.C. 6, 138 S.E. 343.
But this does not work a complete exoneration of the appealing defendant. Without going into an unnecessary analysis of the terms in which the instructions to the jury were actually couched, it is sufficient to say that the court was justified, under the evidence, in instructing the jury upon the exceptions to the general rule that the employer of an independent contractor is not liable for negligence arising in the progress of the work. Whether we consider the evidence as tending to show that the work, under the circumstances of this case, involved an inherent danger, or whether it tended to show that under the contract it might reasonably have been foreseen that the work, which was ordinarily accomplished without danger, when adequate precautions are taken, might, in its progress, give rise to conditions of danger when such precautions are omitted, the defendant was not entitled to have the case withdrawn from the jury on either aspect.
The conditions under which an employer is held liable for negligence notwithstanding the employment of an independent contractor, are well understood. These exceptions to the general rule are comprehensively expressed in 27 Am. Jur., pp. 515, 516: "It is well settled that one who orders work to be executed, from which in the natural course of things, injurious consequences must be expected to arise, unless means are adopted by which such consequences may be prevented, is bound to see that necessary steps are taken to prevent the mischief, and such person cannot relieve himself of his responsibility by employing someone else, whether the contractor employed to do the work from which the danger arises or some third person, to do what is necessary to prevent the work from becoming wrongful. This rule is sufficiently comprehensive to embrace, not only work which, from its descriptions, is `inherently' or `intrinsically dangerous,' but also work which will, in the ordinary course of events, occasion injury to others if certain precautions are omitted, but which may, as a general rule, be executed with safety if those precautions are adopted."
This is almost the identical language employed in Bower v. Peate, 1 Q. B. Div. (1875-6), 321, and quoted in full with approval in Davis v.Summerfield, 133 N.C. 325, 328, 329, 45 S.E. 654, 655, and again inCole v. Durham, 176 N.C. 289, 298, 97 S.E. 33, 37.
The courts have found no rule of universal application by which they may abstractly draw a line of classification in every case between work which is inherently dangerous and that which is not. The subject must not be confused with concepts of hazardous employment, usually involving a high degree of danger, since here we are dealing with danger which *Page 259 
manifests itself to the general public. It is not essential, to come under the rule, that the work should involve a major hazard. It is sufficient if there is a recognizable and substantial danger inherent in the work, as distinguished from a danger collaterally created by the independent negligence of the contractor, which latter might take place on a job itself involving no inherent danger. This concept is aptly expressed in a leading case as follows: "If the work itself creates the danger or injury, then the ultimate superior or proprietor is liable to the person injured by a failure to properly guard or protect the work, even though the work is entrusted to an independent contractor." Downey v. Lowe, 48 N.Y. S., 207.
Our own Court expresses it: "The liability of the employer rests upon the ground that mischievous consequences will arise from the work to be done unless precautionary measures are adopted, and the duty to see that these precautionary measures are adopted rests upon the employer, and he cannot escape liability by entrusting this duty to another as an `independent contractor' to perform." Thomas v. Lumber Co., 153 N.C. 351,69 S.E. 275; S. Louis S. F. R. Co. v. Maddern, 77 Kan. 80,93 P. 586; Cameron Mills and Elevator Co. v. Anderson, 98 Tex. 156,81 S.W. 282.
To come under the second condition of liability it is only necessary that the work which, as a general rule may be carried out with safety if certain precautions are observed, will likely cause injury if these precautions are omitted. Richardson v. Consolidated Light, 90 Vt. 552,99 A. 241; Johnson v. J. I. Case Threshing Machine Co., 193 Mo. App. 198,182 S.E. 1089.
Such negligence is, of course, affected by the condition of foreseeability, which is necessary to fix the defendant with liability, but the rule of reasonable prudence forbids that one should escape liability for the consequences of his act on the ground that he could not foresee such consequences in photographic detail. The usual rules apply in such cases, and it is only necessary that he might reasonably see that some similar result might follow as a consequence of his act. Lancaster v.Greyhound Corp., 219 N.C. 679, 688, 14 S.E.2d 820, 826; Hunter v. R.R., 152 N.C. 682, 68 S.E. 237; Washburn v. Laclede Gas Light Co.,202 Mo. App. 102, 115, 214 S.W. 410, 414.
The contractor may, of course, be liable for the same want of due care in not taking the necessary precautions, for the omission of which the employer becomes liable; but as to the employer, the liability is direct, and not derivative, since public policy fixes him with a nondelegable duty to see that the precautions are taken.
In applying these principles to the case at bar, we cannot divest the work of its surrounding circumstances as disclosed by the evidence — *Page 260 
consider that the contractor was simply digging a ditch, and leave it at that. The facts as they appear in evidence are that the defendant, in compliance with its contract with Oliver, caused this excavation or ditch to be made. It was something like a yard wide and approximately three and one-half feet deep, with an iron pipe at the bottom. The excavation was made alongside and contiguous to the porch of an inhabited house, and in a thickly populated area, much frequented both by children and adults. Considering the physical conditions, its location and the surrounding circumstances, it was of a character which might well be considered dangerous to those lawfully using the premises or being within the zone affected by the defendant's nondelegable duty to see that precautions were taken to avoid or eliminate the danger.
To get the whole picture, we must understand that the conditions under which the work is to be done, within the contemplation of the parties, the known circumstances which attend it, enter importantly into the question whether it is hazardous — that is, whether it involves an appreciable and foreseeable danger to the workers employed or to the public generally, against which suitable precautions must be taken. Young v. Lumber Co.,147 N.C. 26, 60 S.E. 654; Hunter v. R. R., supra; Cole v. Durham,176 N.C. 289, 97 S.E. 33; annotations, 23 A.L.R., 1084; 76 A.L.R., 1258. And it must be observed, too, that the liability of the employer is not affected by the fact that these precautions are usually taken or that the independent contractor explicitly agrees to provide them. Annotations, 65 L.R.A., 37.
Known conditions under which the contract must be carried out, the time, place, and circumstances attending the work, may unquestionably affect its character as hazardous or nonhazardous. For instance, the ordinary erection of a building has, under the circumstances of the particular case, been held to be a nonhazardous work, Looker v. Gulf Coast Fair, 203 Ala. 42,81 So. 832; Boomer v. Wilbur, 176 Mass. 482, 57 N.E. 1004, 53 L.R.A., 172, yet if the contract call for the construction, in a populous city, of a steel skyscraper, flush with the sidewalk, where beams weighing tons are lifted and swung into position by powerful derricks, the construction of such a building would scarcely be considered as involving no danger to the public. Earl v. Reid, 21 Ont. L. Rep., 545 (these citations are from pertinent text, 27 Am. Jur., 522). Cutting and removing a tree in the midst of a forest would probably not rank as a hazardous work. But the cutting and removal of a large tree in close proximity to dwellings and in an area traversed by many people, would probably be sufficiently hazardous as to require precautions with which we are all familiar. Young v. Lumber Co.,147 N.C. 26, 60 S.E. 654. So to dig a drain ditch in a pasture, far from human habitation, certainly would not be considered dangerous; but an excavation *Page 261 
of that character a yard wide and three and one-half feet deep, in a thickly populated area, where many persons have and exercise the right to be, is, we think, if left without adequate precautions, too obviously dangerous to be debatable.
The duty of appellant to those who might lawfully be within the zone of danger created by the failure to use due precautions is not subject to the limitations applying to the duty of the owner of the premises, for the appellant was not such owner under the stipulation found in the record. We therefore omit any discussion of the status of the injured child as licensee, invitee or trespasser. The duty which the appellant owed was to any member of the general public who might lawfully be at the place of danger and suffer injury therefrom.
The voluntary nonsuit taken as to the codefendant, Elliott, left the cause of action as to the appealing defendant unaffected. That would be so in any case, since the plaintiff was not required to bring action against both tort-feasors, even though their negligence might have been joint or concurrent. In the case at bar, however, the negligence of appellant, if it is found negligent, is not imputed, but is original and independent as a violation of duty which the policy of the law makes nondelegable.
But we think the able trial judge fell into error in his presentation to the jury of the principles governing liability of the employer of an independent contractor, and the application of these principles to the facts. It was error to instruct the jury that in order to have the first issue answered in the affirmative, the burden was upon the defendant to show that the work did not fall within the exceptions above mentioned. Such proof was not relevant to the issue. Furthermore, the confusion thus produced vitiated the instruction on the second issue. Indeed, we think it was error to instruct the jury on the relation of master and servant, and negligence which might be imputed to defendant on that theory, and upon the principle of agency or respondeat superior, a relation which, as the evidence now stands, did not exist.
For this error the appellant is entitled to a new trial, and it is so ordered.
New trial.