**William Larry DICKERSON and Letha Dickerson, Plaintiffs,**

v.

**AME, INC., Defendant and Third–Party Plaintiff,**

v.

**INTERSTATE SIGN COMPANY, INC., Third–Party Defendant.**

No. 8:96–1064–20.

United States District Court, D. South Carolina, Anderson Division.

Nov. 4, 1996.

William M. Grant, Jr., Greenville, SC and Raymond G. Chadwick, Jr., Gregg E. McDougal, and R. Perry Sentell, III, Augusta, GA, for Plaintiff.

N. Heyward Clarkson, III, Greenville, SC and Edward F. Hennessey, IV, Charlotte, NC, for Defendant.

James D. Brice and C. William McGee, Greenville, SC, for Third–Party Defendant.

## ORDER

HERLONG, District Judge.

This matter is before the court on the motion of the third-party defendant, Interstate Sign Company, Inc. ("Interstate"), to dismiss for failure to state a claim upon which relief can be granted. The defendant and third-party plaintiff, AME, Inc. ("AME"), filed a memorandum in opposition to the motion to dismiss.

The court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 in that the plaintiffs are citizens of Georgia, AME is a citizen of South Carolina, and the amount in controversy is in excess of fifty thousand dollars ($50,000).

AME leased a crane and operator to Interstate. The crane was to be used to assist in the renovations of the E–Z Serve Citgo station located on Sharon Lakes Drive in Charlotte, North Carolina. The operator was Brodis Dean Cash ("Cash"). Interstate had also entered into a subcontract with Pro Fast Installations, which is owned by the plaintiff, William Larry Dickerson ("Dickerson"), to perform various construction related services.

According to AME, Dickerson met Cash at the job site. Dickerson then directed Cash where to erect the crane and where to lay certain steel beams. Once Cash began moving the steel beams with the crane, Dickerson gave Cash guidance signals to tell him where to put them. After signaling Cash to lower one of the steel beams, Dickerson grabbed hold of it so that he could push it into position. Neither Cash nor Dickerson was aware of the fact that the cable supporting the steel beam had come into contact with a nearby power line. The power line was active and uninsulated, and Dickerson suffered severe injuries. Because the injury occurred in North Carolina, both parties are in agreement that North Carolina law governs this action. AME alleges two causes of action against Interstate: contractual indemnity and equitable indemnity. (Third–Party Compl. ¶¶ 8–26.)

Interstate's motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure relies on matters outside the pleadings such as depositions and exhibits. As a result, Interstate's motion to dismiss must be treated as a motion for summary judgment. Fed.R.Civ.P. 12(b)(6). Summary judgment is permitted when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to demonstrate the absence of any genuine issue of material fact, and the court must view the facts and inferences in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364–65 (4th Cir.1985).

AME bases its claim for contractual indemnity on its standard leasing agreement. Initially, the court is presented with the issues of (1) whether there is in fact a valid lease agreement between AME and Interstate that covers the crane and operator that were involved in the incident, and (2) whether the indemnity clause is valid. When the safety director for AME was asked if there was a contract for this job, Carolyn M. White ("White") responded that "the crane operator had it with him, [h]e just didn't have it signed." (White Dep. at 28–29.)

The other issue presents itself if the indemnity clause contained in the lease agreement is purported to require Interstate to indemnify AME from AME's own negligence. If so, then the provision violates

N.C.Gen.Stat. § 22B–1 (1995), because § 22B–1 invalidates construction indemnity provisions which attempt to hold one party responsible for the negligence of another. *City of Wilmington v. N.C. Natural Gas,* 117 N.C.App. 244, 450 S.E.2d 573, 576 (1994); *International Paper Co. v. Corporex Constr., Inc.,* 96 N.C.App. 312, 385 S.E.2d 553, 555 (1989); *see* N.C.Gen.Stat. § 22B–1 (1995). For purposes of the motion before the court, the court assumes that there is a valid lease agreement that covered this particular crane and operator and that the indemnity clause is not void.

The standard leasing agreement between AME and Interstate states in pertinent part:

> The Lessee also agrees to hold harmless and indemnify the Lessor against any and all claims for damages arising out of bodily injury and/or property damage to third parties, including Lessee's employees resulting from the actual or alleged negligent use or operation of the equipment, including the rigging thereof, subject to this rental agreement.

(Def.'s Mem.Supp.Mot. to Join Third–Party Def.Ex.A.) AME asserts that by operation of this clause, "Interstate is bound to indemnify AME for any damages or losses, including attorneys' fees and costs, AME incurs as a result of negligent acts attributable to Interstate." (Def.'s Mem. Opp'n Third–Party Def.'s Mot. Dismiss at 6.) AME must, therefore, show that it can be liable for negligent acts attributable to Interstate for this clause to become operative.

AME's second cause of action, equitable indemnity, also requires that AME show that it can be held liable for negligent acts attributable to Interstate. Because AME's claim for contractual indemnity and for equitable indemnity are in relevant respects identical, the court will treat them together.

■ The plaintiffs' complaint asserts causes of action against AME for negligence, gross negligence, and recklessness regarding the operation of its crane. (Pl.'s Compl. ¶ 14.) In its memorandum in opposition, AME has successfully shown that Interstate may be jointly liable to the plaintiffs or that Interstate may be solely liable to the plaintiffs, and both assertions may constitute a defense to the action between the plaintiffs and AME. As will be discussed below, AME has not, however, shown that by operation of law it can be held liable for acts *attributable* to Interstate. Therefore, AME has not stated a claim for contractual indemnity even if the lease agreement is in effect and the indemnity clause is valid, nor has it stated a claim for equitable indemnity after assuming the facts it alleges are true.

Indemnity is part of the doctrine of primary-secondary liability. *See Hendricks v. Leslie Fay, Inc.,* 273 N.C. 59, 159 S.E.2d 362, 365 (1968) ("[O]ne may set up a cross-action against the other for indemnity under the doctrine of primary-secondary liability."). "The right to indemnity between defendants arises when liability is imposed upon one defendant for the other's tortious conduct through operation of law, as for example, through the doctrine of *respondeat superior.*" *Kim v. Professional Business Brokers, Ltd.,* 74 N.C.App. 48, 328 S.E.2d 296, 299 (1985). "In order to recover indemnity from a second defendant, the first defendant must allege and prove (1) that the second defendant is liable to the plaintiff and (2) that the first defendant's liability to the plaintiff is derivative, that is, based upon the tortious conduct of the second defendant." *Id.* AME cannot show that its liability is based upon the tortious conduct of the second defendant for two reasons.

First, taking the facts alleged in its complaint as true, AME's claim is that Interstate is the only entity liable to the plaintiffs. (*See* Third–Party Compl. ¶¶ 8–26.) AME claims that the sole causes of the accident were Interstate's failure to provide a site overseer, (*id.* at ¶ 18), negligent supervision of the work crew, (*id.* at ¶ 19), failure to supply a qualified signalman, (*id.* at ¶ 21), failure to request that the power lines be shut off or insulated, (*id.* at ¶ 18), and Dickerson's own negligence (*id.* at ¶ 19).

"The doctrine of primary-secondary liability cannot arise where an original defendant alleges that the one whom he would implead as a third-party defendant is solely liable to plaintiff." *Edwards v. Hamill,* 262 N.C. 528, 138 S.E.2d 151, 153 (1964); *accord Greene v.*

*Charlotte Chem. Lab., Inc.*, 254 N.C. 680, 120 S.E.2d 82, 89 (1961). "Obviously, if a plaintiff sues defendant A when the negligence of B is the sole proximate cause of plaintiff's injuries and A has no derivative, or imputed, liability for the acts of B, A is not liable to the plaintiff and therefore not entitled to indemnity from B." *Edwards,* 138 S.E.2d at 153.

AME may choose to assert the sole liability of Interstate as a defense to the plaintiffs' claims, but "[o]ne defendant may not substitute another party for himself by alleging the sole negligence of the other as the proximate cause of a plaintiff's injuries." *Id.*

Second, AME's claim for indemnity fails because it cannot assert law that will make it vicariously liable for the negligent acts of Interstate. AME attempts to avoid this conclusion by showing that it can be liable for the negligent acts of Interstate based on two theories. Initially, AME claims that its crane operator, Cash, was a borrowed or leased employee under the control of Interstate. This claim fails as a matter of law.

"[A]n employer may lend or otherwise furnish his employee to another person so as to be relieved from liability for an injury caused by the negligence of the employee in performing work for the other person." *Lewis v. Barnhill,* 267 N.C. 457, 148 S.E.2d 536, 542 (1966). "It is equally true that an employer may, for a consideration or otherwise, direct his employee to go upon the premises of another and there perform work, to be designated by such other person, without severing the employment relation between the general employer and the employee." *Id.*

As stated by the North Carolina Supreme Court in *Weaver v. Bennett,* 259 N.C. 16, 129 S.E.2d 610 (1963):

> The crucial test in determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it.
>
> Where one is engaged in the business of renting out ... cranes or any other machine, and furnishes a driver or operator

as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer in fact assumes control of the employee's manner of performing the work, the servant remains in the service of his original employer.

*Id.*

■ Therefore, although a servant can have two masters, a general employer and a special employer, the power of control is the real test of liability. *Beatty v. H.B. Owsley & Sons, Inc.,* 53 N.C.App. 178, 280 S.E.2d 484, 487 (1981). In *Lewis v. Barnhill,* 148 S.E.2d at 543, the North Carolina Supreme Court had to determine who had control as between a general employer and a special employer upon facts that were remarkably similar to the ones alleged by AME. In *Lewis,* a crane leasing company attempted to assert that because its crane operator had been told where to set up and had been given hand signals by an employee of the special employer, he had become a leased or borrowed employee of the special employer. The *Lewis* court found that the hand signals were not commands, but merely relayed information that the crane operator could not determine for himself because of his position within the crane. As a result, the crane operator was not a borrowed or leased employee. *Id.*

■ In another similar case, the North Carolina Court of Appeals found that instructing the crane operator when to lift the beams, how to lift the beams, and where and how to place them was not enough, standing alone, to make the crane operator an employee of the special employer. *Beatty,* 280 S.E.2d at 487. It is significant that the general employer had the power to hire and fire the crane operator, that the crane operator was a specialist—a skilled crane operator—and that the general employer was in the business of renting heavy equipment and people to operate the equipment. *Id.; see also* Restatement (Second) of Agency § 227, cmt. c (1958). The facts of these two cases are indistinguishable from the facts alleged by AME. Therefore, the court finds as a

matter of law that AME's crane operator was not a borrowed or leased employee.

■ Even if Cash was a borrowed or leased employee of Interstate, AME still would not have a cause of action for indemnity. A finding that Cash is a borrowed or leased employee would operate to relieve AME of any liability for Cash's negligence. *Lewis*, 148 S.E.2d at 542. As a result, Interstate's negligence cannot be imputed to AME by virtue of the operation of the borrowed or leased employee doctrine. Therefore, AME's theory still lacks the requirement of imputed liability that is an element of its cause of action for indemnity.

Next, AME claims that it may be held liable for the negligence of Interstate, because operating the crane near power lines constitutes an inherently dangerous activity. As a general contractor, AME asserts that Interstate has a non-delegable duty to provide a safe work environment during the performance of an inherently dangerous activity.

■ "For the torts of an independent contractor, as distinguished from a servant, it has long been said to be the general rule that there is no vicarious liability upon the employer." *Hendricks v. Leslie Fay, Inc.*, 273 N.C. 59, 159 S.E.2d 362, 365 (1968). However, activities that are inherently dangerous provide an exception to this general rule. *Id.* The exception to the rule states that "[o]ne who employs an independent contractor to perform an inherently dangerous activity may not delegate to the independent contractor the duty to provide for the safety of others." *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222, 235 (1991). "The party that employs the independent contractor has a continuing responsibility to ensure that adequate safety precautions are taken." *Id.*

■ In order to prove that an activity is inherently dangerous, it must be shown that the activity itself presents "a recognizable and substantial danger inherent in the work, as distinguished from a danger collaterally created by the independent negligence of the contractor." *Id.* (quoting *Evans v. Rockingham Homes, Inc.*, 220 N.C. 253, 17 S.E.2d 125, 128 (1941)).

■ Assuming that operating a crane near power lines is a dangerous activity, AME has failed to state a claim upon which relief can be granted. Because the doctrine AME is asserting holds employers liable for the negligence of the contractor, it is a form of vicarious liability. *Deitz v. Jackson*, 57 N.C.App. 275, 291 S.E.2d 282, 285 (1982). That liability is imputed from the independent contractor performing the inherently dangerous activity, in this case AME, to the general contractor, Interstate. The doctrine does not operate in the reverse to impute AME with liability for Interstate's negligence. Once again, AME has shown that Interstate may also be liable to the plaintiffs, and it may choose to assert this as a defense. However, AME has not shown that Interstate is liable to it for indemnification.

Moreover, liability for an inherently dangerous activity by definition means that both the independent contractor and the general contractor are negligent. *See Deitz*, 291 S.E.2d at 285 (holding that certain kinds of activities occasion an employer's vicarious liability for his independent contractor's torts).

■ Therefore, pursuant to the doctrine of liability for an inherently dangerous activity, AME is asserting that both it and Interstate are joint tortfeasors. Consequently, the two parties are in pari delicto. "Indemnity is not permitted when the defendants are in *pari delicto*, that is, when both defendants breach substantially equal duties owed to the plaintiff." *Kim v. Professional Business Brokers, Ltd.*, 74 N.C.App. 48, 328 S.E.2d 296, 299 (1985).

■ In the case of two defendants that are in pari delicto, one party's remedy against the other is for contribution; it may not have indemnity. *Edwards v. Hamill*, 262 N.C. 528, 138 S.E.2d 151, 153 (1964); *Hayes v. Wilmington*, 243 N.C. 525, 91 S.E.2d 673, 687 (1956) ("It is a case for contribution rather than indemnity.").

Although AME could have chosen to plead the inconsistent defenses of contribution and indemnity, *Edwards*, 138 S.E.2d at 153, it has not done so. As a result, AME cannot support its causes of action for indemnification

based on the doctrine of vicarious liability for an inherently dangerous activity. Because AME chose to implead Interstate only for the purpose of indemnity, and AME has failed to show the elements of that cause of action, the court must grant summary judgment for Interstate.

Accordingly, it is

**ORDERED** that Interstate's motion for summary judgment is granted.

**IT IS SO ORDERED.**