GLORIA M. KINSEY, Administratrix of the Estate of Norman L. Kinsey, Plaintiff v. CLEVELAND SPANN and JOSEPHINE FRINK, Defendants

No. COA99-1036

(Filed 1 August 2000)

## 1. Negligence— inherently dangerous activity—elements

In order to substantiate an inherently dangerous activity claim, a plaintiff must satisfy the four elements that: (1) the activity is inherently dangerous; (2) at the time of the injury, the employer either knew, or should have known, that the activity was inherently dangerous; (3) the employer failed to take the necessary precautions to control the attendant risks; and (4) the employer's failure proximately caused injury to plaintiff.

## 2. Negligence— inherently dangerous activity—tree removal

The trial court properly refused to submit plaintiff's inherently dangerous activity claim for the jury's consideration in a negligence action where defendant-tree feller was attempting to remove dead tree branches from the property of defendant-landowner after a hurricane and a tree limb hit plaintiff's husband on the head and killed him, because although plaintiff's evidence at trial with regard to the nature of the work and where it was to be performed was sufficient to satisfy the first element of her inherently dangerous activity claim, plaintiff failed to produce evidence demonstrating that defendant-landowner either knew or should have known that tree felling is inherently dangerous.

## 3. Negligence— negligent selection—elements

In order to substantiate a claim of negligent selection, a plaintiff must prove the four elements that: (1) the independent contractor acted negligently; (2) he was incompetent at the time of the hiring, as manifested either by inherent unfitness or previous specific acts of negligence; (3) the employer had notice, either actual or constructive, of this incompetence; and (4) plaintiff's injury was the proximate result of this incompetence.

## 4. Negligence— negligent selection—tree removal

The trial court properly refused to submit plaintiff's negligent selection claim for the jury's consideration in a negligence action where defendant-tree feller was attempting to remove dead tree branches from the property of defendant-landowner after a hurri-

cane and a tree limb hit plaintiff's husband on the head and killed him, because: (1) plaintiff's evidence at best showed that defendant-tree feller had no professional certification or license in tree surgery and never owned or operated a tree removal service, which in an of itself does not rise to the level of incompetence; (2) the evidence revealed that defendant-tree feller had been trained in tree felling and trimming; and (3) plaintiff's own expert testified there is no requirement that tree surgeons be certified or licensed, and that most of them in fact are not.

## 5. Negligence— landowner liability—tree removal

The trial court did not err by refusing to instruct the jury on plaintiff's landowner liability claim in a negligence action where defendant-tree feller was attempting to remove dead tree branches from the property of defendant-landowner after a hurricane and a tree limb hit plaintiff's husband on the head and killed him, because to the extent that such a claim does exist in North Carolina, it would be subsumed within either plaintiff's agency claim or her inherently dangerous activity claim.

Appeal by plaintiff from order entered 23 April 1999 by Judge William C. Griffin in New Hanover County Superior Court. Heard in the Court of Appeals 15 May 2000.

*Nunalee & Nunalee, L.L.P., by Mary Margaret McEachern Nunalee, for plaintiff-appellant.*

*Johnson & Lambeth, by Maynard M. Brown, for defendant-appellee Josephine Frink.*

*No brief filed for defendant-appellee Cleveland Spann.*

LEWIS, Judge.

Hurricane Fran blew through the North Carolina coast in September 1996. With it, several homes and yards were damaged, including the yard of defendant Josephine Frink. Following the storm, Ms. Frink engaged the services of her great-nephew, defendant Cleveland Spann, to clean up the storm debris. In particular, she asked him to cut down and remove some dead trees. Mr. Spann was not a professional tree feller, but he had received instruction on the subject from a tree trimming school. On 29 October 1996, a branch from one of the trees Mr. Spann was attempting to remove fell onto the property of Ms. Frink's neighbors, Norman and Gloria Kinsey. In

so doing, the tree limb hit Mr. Kinsey on the head. He died two days later from the resultant injuries.

Plaintiff thereafter filed a negligence cause of action against Mr. Spann. She also sought to recover from Ms. Frink under alternative theories of liability. Specifically, she alleged a principal-agent relationship existed between Ms. Frink and Mr. Spann such that Ms. Frink was vicariously liable for Mr. Spann's negligence ("the agency claim"). If no such agency relationship existed (i.e., if Mr. Spann was only an independent contractor), plaintiff contended Ms. Frink was still liable under one of three theories: liability based upon the felling or trimming of trees being an inherently dangerous activity ("the inherently dangerous activity claim"); liability based upon the negligent selection of Mr. Spann for the work ("the negligent selection claim"); and liability based upon Ms. Frink's failure to control the actions of a third party (i.e., Mr. Spann) on her property ("the landowner liability claim").

Following the close of evidence, defendants moved for directed verdict as to all of plaintiff's claims. The trial court denied the motion. However, the trial judge then only submitted plaintiff's agency claim for the jury's consideration, refusing to submit all her claims based upon the alternate premise that Mr. Spann was an independent contractor. The jury concluded that Mr. Spann was negligent in performing his work, but also concluded that he was not Ms. Frink's agent at the time. Accordingly, only Mr. Spann was liable for the $300,000 verdict. Plaintiff thereafter filed a motion for new trial under Rule 59(a), which the trial court denied on 23 April 1999. From this order denying her a new trial, plaintiff appeals.

Generally, a motion for new trial is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a manifest abuse of that discretion. *In re Will of Herring*, 19 N.C. App. 357, 359, 198 S.E.2d 737, 739 (1973). However, where the motion involves a question of law or legal inference, our standard of review is *de novo*. *Id.* at 359-60, 198 S.E.2d at 739-40.

Here, plaintiff based her motion for new trial on three grounds: (1) the trial court's actions caused irregularities that prevented her from receiving a fair trial, N.C.R. Civ. P. 59(a)(1); (2) there was insufficient evidence to support the jury's verdict, N.C.R. Civ. P. 59(a)(7); and (3) the trial court committed various errors of law, N.C.R. Civ. P. 59(a)(8). The first two grounds asserted by plaintiff involve neither questions of law nor legal inferences, thereby necessitating an abuse

of discretion standard. *See Horne v. Trivette*, 58 N.C. App. 77, 82, 293 S.E.2d 290, 293 (setting forth the standard of review for motions pursuant to Rule 59(a)(1)), *disc. review denied*, 306 N.C. 741, 295 S.E.2d 759 (1982); *Britt v. Allen*, 291 N.C. 630, 634-35, 231 S.E.2d 607, 611 (1977) (setting forth the standard for motions pursuant to Rule 59(a)(7)). We find no abuse of discretion on the part of the trial court here. Plaintiff's third ground for new trial, however, asserts various errors of law pursuant to Rule 59(a)(8). Specifically, she argues the trial court erroneously instructed the jury by failing to submit for its consideration three of her claims against Ms. Frink. Because this ground includes alleged errors of law, we review it *de novo*.

At the outset, defendants assert plaintiff has waived any objection with respect to the jury instructions because she failed to make any formal objection at trial. We disagree. Generally, where a party does not object to the omission of a particular instruction before the jury retires to consider a verdict, that party waives any right to appeal the instruction. N.C.R. App. P. 10(b)(2); *Martin v. Hare*, 78 N.C. App. 358, 364, 337 S.E.2d 632, 636 (1985). However, where a party submits a written request for instructions during the charge conference, that party need not object to the instructions as read in order to properly preserve his appeal as to those instructions. *State v. Smith*, 311 N.C. 287, 290, 316 S.E.2d 73, 75 (1984). Here, plaintiff did submit a written request for certain instructions. Although the written request was not signed by plaintiff's counsel as required by N.C.R. Civ. P. 51(b), we feel plaintiff has acted sufficiently in order to preserve her objection to the instructions on appeal and so consider the merits of that objection.

A trial judge *must* submit any alleged claim to the jury for consideration if the evidence at trial, when viewed in the light most favorable to the proponent, supports a reasonable inference as to each element of that alleged claim. *Cockrell v. Transport Co.*, 295 N.C. 444, 449, 245 S.E.2d 497, 500 (1978). We conclude plaintiff failed to present sufficient evidence to warrant submission of either her inherently dangerous activity claim, her negligent selection claim, or her landowner liability claim.

We begin by analyzing plaintiff's inherently dangerous activity claim. At the charge conference, there was evident confusion as to the elements of this claim, whether it is direct or vicarious in nature, and the difference between inherently dangerous activities and ultra-hazardous ones. We therefore undertake to eliminate some of the confusion by summarizing the law in this area.

As previously noted, plaintiff's three claims that were not submitted to the jury were premised upon Mr. Spann being an independent contractor, as opposed to an agent of Ms. Frink. "Generally, one who employs an independent contractor is not liable for the independent contractor's negligence . . . ." *Woodson v. Rowland*, 329 N.C. 330, 350, 407 S.E.2d 222, 234 (1991). However, if the work to be performed by the independent contractor is either (1) ultrahazardous or (2) inherently dangerous, and the employer either knows or should have known that the work is of that type, liability may attach despite the independent contractor status. *Id.* at 350-51, 356, 407 S.E.2d at 234, 238. This is because, in those two areas, the employer has a nondelegable duty for the safety of others. *Canady v. McLeod*, 116 N.C. App. 82, 88, 446 S.E.2d 879, 883, *disc. review denied*, 338 N.C. 308, 451 S.E.2d 632 (1994). Our Supreme Court has justified this outcome as follows: "By holding both an employer and its independent contractor responsible for injuries that may result from [these] activities, there is a greater likelihood that the safety precautions necessary to substantially eliminate the danger will be followed." *Woodson*, 329 N.C. at 352-53, 407 S.E.2d at 235.

"Ultrahazardous" activities are those that are so dangerous that even the exercise of reasonable care cannot eliminate the risk of serious harm. *Id.* at 350, 407 S.E.2d at 234. In such cases, the employer is *strictly* liable for any harm that proximately results. *Id.* In other words, he is liable even if due care was exercised in the performance of the activity. *Id.* at 351, 407 S.E.2d at 234. In North Carolina, only blasting operations are considered ultrahazardous. *Id.* "Inherently dangerous" activities are those dangerous activities (like ultrahazardous ones) that carry with them certain attendant risks, but whose risks (unlike ultrahazardous ones) can be eliminated by taking certain special precautions. *Id.* When inherently dangerous activities are involved, any liability by the employer is governed by principles of *negligence*, as opposed to strict liability. *Id.*

With respect to negligence claims based upon inherently dangerous activities, there has been some inconsistency within the opinions of our courts as to whose negligence is to be considered. A few earlier decisions looked at the negligence of the *independent contractor* and imputed liability to the employer for any negligence by the contractor. *See, e.g., Hendricks v. Fay, Inc.*, 273 N.C. 59, 63, 159 S.E.2d 362, 366 (1968) ("But the cases of 'non-delegable duty' . . . hold the employer liable for the negligence of the *contractor*, although he has himself done everything that could reasonably be required of him.")

(emphasis added); *Deitz v. Jackson*, 57 N.C. App. 275, 279, 291 S.E.2d 282, 285 (1982) ("This rule imposes liability on an employer for the negligent torts of *independent contractors* performing, for the employer, an activity which would result in harmful consequences unless proper precautions are taken . . . ."). These cases thus suggest the employer's liability is vicarious in nature. *Hendricks*, 273 N.C. at 62, 159 S.E.2d at 366.

In more recent decisions, however, our courts have clarified that it is the negligence of the *employer*, not the independent contractor, that must be considered; liability is direct, not vicarious, in nature. *See, e.g., Woodson*, 329 N.C. at 352, 407 S.E.2d at 235 ("The party that employs an independent contractor has a continuing responsibility to ensure that adequate safety precautions are taken. . . . The employer's liability for breach of this duty 'is direct and not derivative . . . .' "); *see also Lane v. R.N. Rouse & Co.*, 135 N.C. App. 495, 497, 521 S.E.2d 137, 139 (1999) (focusing on the acts or omissions of the *employer*), *disc. review denied*, 351 N.C. 357, —— S.E.2d —— (2000); *O'Carroll v. Texasgulf, Inc.*, 132 N.C. App. 307, 312, 511 S.E.2d 313, 317-18 (1999) (same), *disc. review denied*, 350 N.C. 834, —— S.E.2d —— (2000); *Dunleavy v. Yeats Construction Co.*, 106 N.C. App. 146, 153, 416 S.E.2d 193, 197 (same), *disc. review denied*, 332 N.C. 343, 421 S.E.2d 146 (1992). Thus, liability will attach only if *the employer* failed to take the necessary precautions to control the risks associated with the activity. *Woodson*, 329 N.C. at 352, 407 S.E.2d at 235.

[1] To summarize, in order to substantiate an inherently dangerous activity claim, a plaintiff must satisfy four elements. First, the activity must be inherently dangerous. *O'Carroll*, 132 N.C. App. at 312, 511 S.E.2d at 317. Second, at the time of the injury, the employer either knew, or should have known, that the activity was inherently dangerous. *Id.* Third, the employer failed to take the necessary precautions to control the attendant risks. *Id.* at 312, 511 S.E.2d at 318. And fourth, this failure by the employer proximately caused injury to plaintiff. *Id.*

[2] With respect to the first element, plaintiff asserts that the felling or trimming of trees is an inherently dangerous activity. A given activity is inherently dangerous if it carries with it some substantial danger inherent in the work itself. *Evans v. Rockingham Homes, Inc.*, 220 N.C. 253, 259, 17 S.E.2d 125, 128 (1941). Any collateral dangers created by how the work is actually performed are immaterial and have no effect on whether the activity is inherently dangerous. *Id.*

Although the question as to whether a given activity is or is not inherently dangerous can be decided as a matter of law, *see, e.g., Brown v. Texas Co.*, 237 N.C. 738, 741, 76 S.E.2d 45, 47 (1953) (holding that sign erection is not inherently dangerous); *Evans*, 220 N.C. at 260-61, 17 S.E.2d at 30 (holding that open trenching in a heavily-populated area is inherently dangerous); *Peters v. Woolen Mills*, 199 N.C. 753, 754, 155 S.E. 867, 868 (1930) (holding that installing electrical wires is inherently dangerous); *Vogh v. Geer*, 171 N.C. 672, 676, 88 S.E. 874, 876 (1916) (holding that ordinary building construction is not inherently dangerous), this determination often must be left for the jury to consider in light of the particular conditions and circumstances of each case. *Woodson*, 329 N.C. at 353-54, 407 S.E.2d at 236.

In this regard, the area where the activity is to be performed is significant. For instance, our Supreme Court in *Evans v. Rockingham Homes, Inc.* held that trench digging in a heavily-populated area is inherently dangerous as a matter of law, but pointed out that the same activity performed in a rural, unpopulated area would not be inherently dangerous. *Evans*, 220 N.C. at 260-61, 17 S.E.2d at 129. Along those lines, although tree felling in a rural, forested area is not inherently dangerous, *Young v. Lumber Co.*, 147 N.C. 26, 34-35, 60 S.E. 654, 658 (1908), a jury could conclude that performing such work in a populated urban area such as the one here is inherently dangerous. Our Supreme Court has even said as much in dicta:

> Cutting and removing a tree in the midst of a forest would probably not rank as a hazardous work. But the cutting and removal of a large tree in close proximity to dwellings and in an area traversed by many people, would probably be sufficiently hazardous as to require precautions with which we are familiar.

*Evans*, 220 N.C. at 260, 17 S.E.2d at 129-30. Plaintiff's evidence at trial with regard to the nature of the work and where it was to be performed was therefore sufficient to satisfy the first element of her claim.

As to the second element, however, we conclude plaintiff has failed to produce evidence demonstrating Ms. Frink either knew or should have known that tree felling is inherently dangerous. At trial, she admitted she had no experience in cutting down trees and no knowledge of how it is done. Instead, she relied exclusively on the expertise of Mr. Spann. Furthermore, Ms. Frink testified that, had she known tree felling was dangerous, she would not have even let Mr. Spann perform the work. Accordingly, plaintiff has not satisfied the

second element. *See Woodson,* 329 N.C. at 358, 407 S.E.2d at 238 ("There is no forecast that [the developer] had any knowledge or expertise regarding safety practices in the construction industry generally or in trenching particularly. So far as the forecast of evidence shows, [the developer] justifiably relied entirely on the expertise of [the independent contractor]."). Because plaintiff's evidence failed to satisfy all the elements of her inherently dangerous claim, the trial court properly refused to submit it to the jury.

[3] Under her next theory of liability, plaintiff asserts that Ms. Frink was negligent in hiring her great-nephew to perform the tree surgery. In order to substantiate a claim of negligent selection, and thus submit it for the jury's consideration, a plaintiff must prove four elements: (1) the independent contractor acted negligently; (2) he was incompetent at the time of the hiring, as manifested either by inherent unfitness or previous specific acts of negligence; (3) the employer had notice, either actual or constructive, of this incompetence; and (4) the plaintiff's injury was the proximate result of this incompetence. *Medlin v. Bass,* 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990).

[4] Plaintiff's evidence at trial failed to satisfy the second and third requirements. With regard to Mr. Spann's alleged incompetence, plaintiff's evidence, at best, only showed that he had no professional certification or license in tree surgery and had never owned or operated a tree removal service. This, in and of itself, does not rise to the level of incompetence. The evidence at trial did reflect that Mr. Spann had been trained in tree felling and trimming. Furthermore, plaintiff's own expert testified there is no requirement that tree surgeons be certified or licensed and that most of them in fact are not. As to the knowledge requirement, plaintiff highlights the evidence that suggested Ms. Frink engaged Mr. Spann only because he was her great-nephew, she knew he was not professionally licensed, and she did not know anyone for whom Mr. Spann had performed tree removal services in the past. But again, this evidence alone is insufficient, especially considering that the evidence also showed she knew he had been trained in tree removal and had some prior experience doing it. Accordingly, the trial court properly refused to submit plaintiff's negligent selection claim for the jury's consideration.

[5] We also uphold the trial court's refusal to instruct the jury on plaintiff's third theory of liability, her landowner liability claim. Plaintiff bases this theory of liability upon the perceived duty of a

landowner to control the conduct of those on his property so as to avoid any unreasonable risk of harm to others outside his property. To the extent that such a claim does exist in North Carolina, it would necessarily be subsumed within either plaintiff's agency claim or her inherently dangerous activity claim. Ms. Frink does have a duty to control and supervise any of her agents performing work on her property; likewise she has a non-delegable duty of reasonable care if she knows or should know inherently dangerous activities are being performed on her property by independent contractors. *See generally* W. Page Keeton, *Prosser and Keeton on Torts*, § 57, at 391-92 (5th ed. 1984). Thus, plaintiff's landowner claim is simply part and parcel to her other claims, and the trial court was not required to submit it separately for the jury's consideration.

In sum, we conclude the trial court properly refused to submit plaintiff's inherently dangerous activity, negligent selection, and landowner liability claims to the jury. Having properly done so, the trial court therefore also properly denied plaintiff's motion for new trial.

No error.

Chief Judge EAGLES and Judge EDMUNDS concur.