An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e    P r o c e d u r e .

NO. COA13-1448

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

RUTH McKINNEY, individually and as
Administratrix for the Estate of
QUINTON McKINNEY, and the Estate
of QUINTON McKINNEY,
    Plaintiffs,

v.                                        Mecklenburg County
                                     No. 13 CVS 2506

GREATER GETHSEMANE AFRICAN
METHODIST EPISCOPAL ZION CHURCH OF
CHARLOTTE, N.C., INC.,
    Defendant.

Appeal by plaintiffs from order entered 23 September 2013 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 May 2014.

    *Gray & Johnson, LLP, by Mark V.L. Gray and Nekia Pridgen, for plaintiff-appellants.*

    *Dean Gibson Hofer & Nance, PLLC, by Rodney Dean, for defendant-appellee.*

BRYANT, Judge.

Where the evidence indicates that the decedent was clearly contributorily negligent, the granting of defendant church's motion for summary judgment was appropriate.

Plaintiffs Ruth McKinney, individually and as Administratrix for the Estate of Quinton McKinney, and the Estate of Quinton McKinney ("plaintiffs"), filed a complaint against several defendants including Greater Gethsemane African Methodist Episcopal Zion Church of Charlotte, N.C., Inc. (defendant "church"). Plaintiffs alleged that on 23 February 2011, Quinton McKinney died while performing maintenance work for defendant church. Specifically, plaintiffs alleged that defendant church solicited McKinney, a member of defendant church, to remove a tree limb hanging over the church parking lot and that while doing so McKinney fell from a ladder and died.

McKinney's fall was not witnessed. Clinton Clinkscales, a member of defendant church who had a "job partnership" with McKinney doing yard maintenance and home repairs, stated that he went with McKinney to the church that day to perform various maintenance tasks as volunteers for defendant church. Clinkscales said that while changing light bulbs inside the church, he received a call from McKinney that McKinney was ready

to cut down the tree limb; Clinkscales asked McKinney to wait until he could come outside and help. Clinkscales stated that when he walked outside of the church a few minutes later, he saw McKinney lying on the ground. An A-frame ladder, a chainsaw, and a tree limb were all near McKinney. McKinney was declared dead at the hospital. Although medical evidence suggested that McKinney had a "cardiac episode" which may have caused him to fall off the ladder, the medical examiner determined that McKinney's ultimate cause of death was a spinal cord injury caused by his fall.

Defendants filed a motion for summary judgment on 4 June 2013. On 23 July 2013, the trial court issued an order granting defendants' motion to dismiss as to the insurance company defendants[1] and reserving ruling as to defendant church.

On 23 September 2013, the trial court granted defendant church's motion for summary judgment. Plaintiffs appeal.

_____

On appeal, plaintiffs raise several issues regarding the trial court's award of summary judgment for defendant church.

_____

[1] On 15 March 2013, defendants filed a motion to dismiss insurance company defendants Philadelphia Insurance Companies; Philadelphia Consolidated Holding, Corp.; Tokio Marine Group; Tokio Marine Holdings, Inc.; and Tokio Marine and Nichido Fire Insurance Co.

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Blackwell v. Hatley*, 202 N.C. App. 208, 211, 688 S.E.2d 742, 745 (2010) (citations omitted). "The showing required for summary judgment may be accomplished by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense[.]" *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (citation omitted). In considering a motion for summary judgment, "[a]ll facts asserted by the [nonmoving] party are taken as true and their inferences must be viewed in the light most favorable to that party." *Nationwide Prop. & Cas. Ins. Co. v. Martinson*, 208 N.C. App. 104, 109, 701 S.E.2d 390, 393 (2010) (citation omitted).

Plaintiffs argue the trial court erred by granting summary judgment in favor of defendant church. Specifically, plaintiffs contend the trial court erred by failing to conclude that tree cutting is an inherently dangerous activity, and that genuine issues of material fact exist as to whether defendant church was negligent in soliciting, training, and supervising McKinney in

cutting down the tree limb; whether defendant church's actions were willful and wanton; whether McKinney was contributorily negligent; and whether McKinney was a third-party beneficiary of insurance company defendants. Because plaintiffs' arguments are closely related, yet offer limited legal authority in support thereof, we address them together.

In general, one who accepts the services of a volunteer is not liable for the volunteer's acts. *See* N.C. Gen. Stat. § 1-539.10(b) (2013) (qualified immunity is waived where an organization secures liability insurance).

> However, if the work to be performed . . . is either (1) ultrahazardous or (2) inherently dangerous, and the [party accepting the work] either knows or should have known that the work is of that type, liability may attach despite the [volunteer's] status. This is because, in those two areas, the [party accepting the work] has a non-delegable duty for the safety of others.

*Kinsey v. Spann*, 139 N.C. App. 370, 374, 533 S.E.2d 487, 491 (2000) (citations omitted). An "inherently dangerous activity" is defined

> as work to be done from which mischievous consequences will arise unless preventative measures are adopted, and that which has a recognizable and substantial danger inherent in the work, as distinguished from a danger collaterally created by the independent negligence of the [worker], which later

might take place on a job itself involving no inherent danger.

*O'Carroll v. Roberts Indus. Contractors, Inc.*, 119 N.C. App. 140, 146, 457 S.E.2d 752, 756 (1995) (citation and quotation omitted). To be successful, a claim for an inherently dangerous activity requires a showing of four elements: (1) the activity must be inherently dangerous; (2) at the time of injury, the [defendant] either knew, or should have known, that the activity was inherently dangerous; (3) the [defendant] failed to take the necessary precautions to control the attendant risks; and, (4) the failure by the [defendant] proximately caused injury to plaintiff. *Kinsey*, 139 N.C. App. at 375, 533 S.E.2d at 492.

Plaintiffs contend the trial court erred in granting summary judgment to defendant church because tree cutting is an inherently dangerous activity. In determining whether an activity is inherently dangerous, this Court has held that "the area where the activity is to be performed is significant." *Id.* at 376, 533 S.E.2d at 492. As such, our Courts have found that although tree felling in a rural, forested area is not inherently dangerous, *Young v. Fosburg Lumber Co.*, 147 N.C. 26, 34—35, 60 S.E. 654, 657—58 (1908), tree felling in a populated urban area is inherently dangerous. *Kinsey*, 139 N.C. App. at 376, 533 S.E.2d at 492.

> Cutting and removing a tree in the midst of a forest would probably not rank as [] hazardous work. But the cutting and removal of a large tree in close proximity to dwellings and in an area traversed by many people, would probably be sufficiently hazardous as to require precautions with which we are all familiar.

*Evans v. Elliot*, 220 N.C. 253, 260, 17 S.E.2d 125, 129–30 (1941) (citation omitted).

Here, McKinney attempted to remove a limb from a tree that stood next to defendant church's parking lot. Although evidence suggested defendant church was concerned about the tree limb possibly falling and damaging parishioners' cars, there is nothing indicating the limb posed an imminent danger to life or property, was located in a populated urban area, or that the entire tree needed to be cut down. Moreover, the statements of Clinkscales indicated McKinney was experienced in tree maintenance, including the use of ladders and chainsaws, to remove tree limbs. As such, the facts of the instant case do not support plaintiffs' contention that McKinney was engaged in an inherently dangerous activity.

In fact, as noted herein, the facts were found to be insufficient to sustain a negligence claim against defendant church based on any theory of negligence. Nevertheless,

assuming *arguendo* a negligence claim had been shown, the evidence indicates McKinney was contributorily negligent.

> In answering the "pivotal question" whether the evidence supports a finding of contributory negligence, a plaintiff's conduct must be judged in the light of the general principle that the law does not require a person to shape his behavior by circumstances of which he is justifiably ignorant, and the resultant particular rule that a plaintiff cannot be guilty of contributory negligence unless he acts or fails to act with knowledge and appreciation, either actual or constructive, of the danger of injury which his conduct involves.

*Shelton v. Steelcase, Inc.*, 197 N.C. App. 404, 424, 677 S.E.2d 485, 499 (2009) (citations and quotation omitted). Although the issue of contributory negligence is "rarely appropriate for summary judgment," summary judgment is appropriate "where the evidence establishes a plaintiff's negligence so clearly that no other reasonable conclusion may be reached." *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 479, 562 S.E.2d 887, 896 (2002) (citation omitted).

The trial court noted during its hearing on defendant church's motion for summary judgment that: based on the respective heights of McKinney, the ladder, and the tree limb, to reach the tree limb McKinney had to have stood on the top rung of the ladder; the ladder used by McKinney was clearly

marked with safety instructions and warnings, including a warning notifying users not to stand on the top rung of the ladder; the ladder was placed on soft ground which would have made it very unstable, even though the tree limb could have been removed if the ladder had been placed several feet over onto the paved parking lot; Clinkscales told McKinney to wait so he could help McKinney, but McKinney did not wait; and McKinney was experienced in tree maintenance and, thus, was aware of the safety risks involved in cutting and removing tree limbs in the manner as indicted by these facts. The trial court also found that while no one witnessed McKinney's accident, medical evidence suggested McKinney may have had a heart attack while cutting down the tree limb which led to him falling off the ladder and sustaining a fatal spinal cord injury. The trial court further noted there was no evidence indicating defendant church demanded or required McKinney to remove the tree limb or that defendant church was aware of the danger involved in removing the tree limb; that Clinkscales stated both he and McKinney were aware that if they felt they could not remove the tree limb safely, defendant church would hire a professional tree service to handle it; and that defendant church had discussed the tree limb generally with McKinney and Clinkscales

because defendant church knew McKinney and Clinkscales were experienced with such tasks.

In granting defendant church's motion for summary judgment, the trial court told plaintiffs that:

> This case is shot through with so many holes that even giving you every benefit of the doubt and every inference, if we were trying to [go] to the jury, it wouldn't go to the jury.
>
> You've got problems with how the accident happened. We don't know why [McKinney] fell. They'd have to – the jury would have to speculate as to why that happened. Was it truly – was this an unfortunate accident or whether, you know, what happened.
>
> You've got problems with the fact that there's – the evidence is that nobody from [defendant] church specifically said, "You've got to go up there and do it," or, "We need you to do it." There's no evidence as required by the Spann case that [defendant] church knew or should have known before making the request that this was an ultra-hazardous activity. I mean, you don't have any of that.

As the trial court notes, every factual inference points toward McKinney being contributorily negligent. Accordingly, the trial court's granting of defendant church's motion for summary judgment was appropriate.

Affirmed.

Judges CALABRIA and GEER concur.

Report per Rule 30(e).