**VECELLIO & GROGAN, INC. v. PIEDMONT DRILLING & BLASTING, INC.**

[183 N.C. App. 66 (2007)]

VECELLIO & GROGAN, INC., Plaintiff v. PIEDMONT DRILLING & BLASTING, INC.,
AND RANGER INSURANCE COMPANY, Defendants

No. COA06-887

(Filed 1 May 2007)

**1. Construction Claims— blasting during sewer construction—cause of damage—issue of fact**

Summary judgment on a strict liability claim arising from blasting during sewer construction was improper because there was a genuine issue of material fact as to the cause of the damage. Plaintiff argued that the cause was improper or excessive use of blasting materials by defendant; defendant argued it was an improper sequence of events (blasting after a first pipeline was laid) to which plaintiff had consented.

**2. Construction Claims— sewer line blasting—contract and negligence claims—summary judgment**

Summary judgment was improperly entered for defendant on claims for breach of contract and negligence that arose from a sewer construction project. Plaintiff asserted breaches of contract about which there were material issues of fact other than the contractual indemnity clause; precedent cited by defendant did not hold that strict liability and negligence are never valid claims between parties to a contract; and plaintiff brought claims with allegations of damage to property other than that which was the subject of the contract, which is a valid basis for a complaint in tort.

**3. Contract— indemnification clause—redacted**

The trial court erred by entering summary judgment for defendant on a contract indemnification claim. Assuming that a phrase in the contract impermissibly indemnified plaintiff against its own negligence, the problem may be solved by removing the offending phrase; the clause, when redacted, simply states the common law rule of strict liability.

**4. Appeal and Error— preservation of issues—inclusion of documents in record**

An appellate argument concerning the quashing of a subpoena was not preserved where the court sealed the documents in question but plaintiff did not include a copy of the documents in the record.

VECELLIO & GROGAN, INC. v. PIEDMONT DRILLING & BLASTING, INC.

[183 N.C. App. 66 (2007)]

Appeal by plaintiff from order entered 13 February 2006 by Judge Henry W. Hight, Jr., and from order entered 3 August 2004 by Judge Robert H. Hobgood, both entered in Wake County Superior Court. Heard in the Court of Appeals 21 February 2007.

*Parker, Poe, Adams & Bernstein L.L.P., by Charles C. Meeker, Brian D. Darer, Catherine B. Arrowood and Melissa S. Daigneault, for plaintiff-appellant.*

*Young Moore & Henderson P.A., by Walter E. Brock, Jr., and Jay Tobin, for defendant-appellee Piedmont Drilling & Blasting, Inc.*

*Johnston, Allison & Hord, P.A., by Greg C. Ahlum, for amicus curiae Carolinas Associated General Contractors of America, Inc.*

LEVINSON, Judge.

Plaintiff appeals from summary judgment entered in favor of defendants, and from an order granting defendant's motion to quash its subpoena served on Forensic Analysis & Engineering Corporation. We reverse in part and dismiss in part.

The relevant facts are summarized as follows: Plaintiff, Vecellio & Grogan, Inc. (V&G), is a West Virginia corporation doing business as a general contractor on road construction contracts. In 2002 V&G was under contract with the North Carolina Department of Transportation (NCDOT) to construct part of a road improvement project for North Carolina Highway 64. The contract required V&G to install two below-ground sewer lines. These lines, designated Sewer Lines A and B, were parallel to each other and about thirty feet apart. Defendant, Piedmont Drilling & Blasting, Inc. (Piedmont), is a North Carolina corporation that provides drilling and blasting services. In October 2002 V&G executed a subcontract with Piedmont, wherein Piedmont agreed to drill and blast the trenches for Sewer Lines A and B. V&G subcontracted with another company to construct the actual sewer lines.

On 1 April 2003 Piedmont was blasting the trench for Sewer Line B. Sewer Line A was partially completed, and piping was installed between two points known as manholes 3 and 4. Piedmont set off an explosion in Sewer Line B which caused damage to both Sewer Lines A and B. The present appeal arises from V&G's claim that Piedmont is liable for the damages resulting from its blasting in Sewer Line B.

Following the explosion on 1 April 2003, the parties contacted Ranger Insurance Company (Ranger), the insurance company that had insured Piedmont. Ranger hired Forensic Analysis & Engineering Corporation (FAEC) to investigate the matter. On 13 May 2003 Ranger paid V&G $600,000 with a check marked "Advance Payment for Property Damages." Neither Ranger nor Piedmont would pay V&G any more money, and on 24 November 2003 V&G filed suit against Piedmont and Ranger for damages not covered by Ranger's advance payment check. V&G sought damages based on strict liability, negligence, breach of contract, and contractual indemnity; additionally, plaintiff sought a declaratory judgment regarding Ranger's obligations. In an amended answer and counterclaim, Piedmont denied the material allegations of the complaint and brought a counterclaim for unpaid labor.

On 23 February 2004 V&G issued a subpoena to FAEC for documents pertaining to the blast. Ranger and Piedmont moved to quash the subpoena; their motions were granted by the trial court in August 2004.

Ranger moved for summary judgment in July 2005. The parties agreed to entry of summary judgment, under the terms of which Ranger was ordered to provide coverage for all non-liquidated damages for which Piedmont was ultimately found liable. Ranger is not a party to this appeal.

In January 2006 V&G moved for partial summary judgment on the issue of liability, and Piedmont moved for summary judgment on all of plaintiff's claims. By order entered 13 February 2006, the trial court granted Piedmont's summary judgment motion, denied V&G's summary judgment motion, and dismissed all of V&G's claims. Thereafter, Piedmont dismissed its counterclaim, allowing V&G to appeal the trial court's summary judgment order. Plaintiff also appeals the trial court's order quashing its subpoena for FAEC.

## Standard of Review

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law.' " N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "On appeal of a trial court's allowance of a motion for summary judgment, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is

entitled to judgment as a matter of law. Evidence presented by the parties is viewed in the light most favorable to the non-movant." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citation omitted).

## Strict Liability for Ultra Hazardous Activities

[1] Plaintiff argues first that the trial court erred by dismissing its claim for damages based on defendant's being strictly liable for damages caused by its blasting.

Plaintiff correctly asserts that blasting with explosives is deemed an "ultra hazardous" activity, for which strict liability is imposed. *Insurance Co. v. Blythe Brothers Co.*, 260 N.C. 69, 131 S.E.2d 900 (1963). In *Blythe*, plaintiffs sought compensation for damages caused by defendant's use of explosives to blast a tunnel for a sewer line. The Court held:

> Blasting is considered intrinsically dangerous; it is an ultra-hazardous activity . . . since it requires the use of high explosives and since it is impossible to predict with certainty the extent or severity of its consequences. . . . "Blasting operations are dangerous and must pay their own way. . . . The principle of strict or absolute liability for extrahazardous activity thus is the only sound rationalization."

*Id.* at 74, 117 S.E.2d at 904 (quoting *Wallace v. A. H. Guion & Company* (S.C.), 237 S.C. 349, 354, 117 S.E.2d 359, 361 (1960)) (citations omitted). North Carolina cases decided after *Blythe* have uniformly held that blasting is an ultra hazardous activity for which the actor is strictly liable. *See, e.g., Kinsey v. Spann*, 139 N.C. App. 370, 374, 533 S.E.2d 487, 491 (2000), in which this Court reiterated that:

> Ultrahazardous activities are those that are so dangerous that even the exercise of reasonable care cannot eliminate the risk of serious harm. In such cases, the employer is strictly liable for any harm that proximately results. In other words, he is liable even if due care was exercised in the performance of the activity. In North Carolina, only blasting operations are considered ultrahazardous.

(citing *Woodson v. Rowland*, 329 N.C. 330, 350-51, 407 S.E.2d 222, 234 (1991)) (internal quotation marks omitted).

Defendant concedes that blasting is subject to strict liability, but contends that in the instant case summary judgment was properly

granted on plaintiff's strict liability claim. Defendant argues that recovery is barred by plaintiff's assumption of risk. Plaintiff argues that assumption of risk is not even a permissible defense to a claim based on strict liability, and that even if it were available as a defense that plaintiff did not assume the risk of the 1 April 2003 blast.

As this case appears before us on appeal from summary judgment, the question before us is whether a genuine issue of material fact exists. It is clear from the record that the parties disagree as to the cause of the damage resulting from the blast: plaintiff argues that the cause was defendant's improper or excessive use of blasting materials; defendant argues that it was the improper sequence of events (i.e., blasting after the other pipeline had been laid), and that the sequence was a change from that agreed upon by the parties, but a change to which plaintiff consented. These arguments present questions of fact for a jury to resolve, and as such summary judgment was improper.

No North Carolina cases directly address the point of how assumption of the risk relates to a claim based on defendant's strict liability for damages arising from an ultra hazardous activity. Moreover, because we cannot know whether the evidence presented at trial on remand will even present a factual issue of assumption of risk, the issue of its availability as a defense in this case is not before us at this time.

For this reason, summary judgment on plaintiff's strict liability claim was improper.

## Claims for Negligence and Breach of Contract

**[2]** Defendant argues that summary judgment was properly granted on plaintiff's breach of contract and negligence claims. We disagree.

Defendant contends that the only contractual provision at issue is the indemnification clause, which defendant asserts is invalid and unenforceable. However, plaintiff's complaint includes, *inter alia*, allegations that:

> . . . .

> 10. Pursuant to Section 1.10 of the Subcontract, Piedmont agreed to adequately and properly perform its work so as to avoid damage to persons or property. . . .

> . . . .

14. The blast set off by Piedmont on April 1, 2003 was excessive and improperly conducted. Upon information and belief, Piedmont improperly used too much explosive in setting off the blast.

. . . .

26. V&G incorporates the allegations contained in paragraphs 1-25 of the Complaint as set forth in full herein.

27. Piedmont has breached the Subcontract by, among other things, failing to adequately and properly protect the blasting work to avoid injury or damage to property.

We conclude that plaintiff asserts other breaches of contract in addition to the indemnification clause, and that there are issues of material fact pertaining to these allegations.

Defendant also asserts that "principles of strict liability and negligence are inapplicable due to the contractual relationship" of the parties. Specifically, defendant cites *Trull v. Well Co.*, 264 N.C. 687, 142 S.E.2d 622 (1965), for the proposition that strict liability is never applicable as between contracting parties. Defendant mischaracterizes the holding of *Trull*.

In *Trull*, plaintiff-homeowner sought damages from the vibrations of well-digging machinery allegedly caused by defendant well-driller's negligence. The Court held that plaintiff had not proven negligence, and declined to extend the definition of ultra hazardous endeavors to include well-drilling. In *dicta*, the Court observed that, even if it had ruled that drilling was ultra hazardous, it did not appear that the plaintiff would necessarily be entitled to recovery, and that plaintiff had not produced evidence of the parties' respective obligations or the issue of proximate cause. This does not constitute a holding that strict liability and negligence are never valid claims between parties to a contract.

Regarding plaintiff's negligence claim, defendant argues the trial court properly granted summary judgment on the grounds that the negligence claim is barred by their contractual relationship. Defendant cites *Ports Authority v. Roofing Co.*, 294 N.C. 73, 240 S.E.2d 345 (1978), in support of this argument. However, *Ports Authority* acknowledged that "there are many decisions of this and other courts holding a promisor liable in a tort action for a personal injury or damage to property proximately caused by his negligent, or

wilful, act or omission in the course of his performance of his contract." *Id.* at 81, 240 S.E.2d at 350. The opinion sets out four general categories of such cases, while noting that it "may well be that this enumeration of categories in which a promisor has been held liable in a tort action by reason of his negligent, or wilful, act or omission in the performance of his contract is not all inclusive." *Id.* at 82-83, 240 S.E.2d at 351.

In the instant case, plaintiff has brought claims based both on negligence and breach of contract. The allegations in its complaint allege damage to property other than that which was the subject of the contract between the parties, that being one of the categories recognized in *Port Authorities* as a valid basis for a complaint in tort. Moreover, there are material issues of fact regarding both the breach of contract and negligence claims. We conclude that summary judgment was improperly entered on these claims.

### Contractual Indemnification

[3] Plaintiff argues that the trial court erred by not granting its motion for summary judgment damages based on an indemnification clause in the contract between plaintiff and defendant.

The term 'indemnity clause' is defined by BLACK'S LAW DICTIONARY 784 (8th ed. 2004) as a "contractual provision in which one party agrees to answer for any specified or unspecified liability or harm that the other party might incur." Under N.C. Gen. Stat. § 22B-1 (2005), a construction contract generally may not include a provision whereby a party is indemnified for its own negligence. The statute states in pertinent part that:

> Any promise or agreement in . . . a contract or agreement relative to . . . construction . . . [of a] highway . . . purporting to indemnify or hold harmless the promisee . . . against liability for damages . . . proximately caused by or resulting from the negligence, in whole or in part, of the promisee . . . is against public policy and is void and unenforceable. . . .

The indemnity clause at issue herein states in relevant part that:

> 41. INDEMNITY. To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless the Owner and Contractor . . . from and against claims, damages, losses and expenses . . . arising out of or resulting from performance of Subcontractor's Work regardless of whether or not such

claim, damage, loss or expense is caused in part by a party indemnified hereunder. . . .

Defendant contends that this clause is invalid and unenforceable because the last phrase, "regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified here-under[,]" serves to indemnify plaintiff against its own negligence. We conclude that even assuming, *arguendo*, that the indemnification clause violates G.S. § 22B-1, this problem may be solved by simply removing the offending phrase.

The indemnification clause starts with the phrase "[t]o the fullest extent permitted by law," which restricts its application to those situations "permitted by law." Indemnification is further limited to damages "arising out of or resulting from performance of Subcontractor's Work[.]" Thus, on its face the indemnity clause is self-limiting: indemnification is restricted to damages (1) that arise or result from performance of <u>defendant's</u> work; and (2) that are "permitted by law."

If the last phrase were removed, the clause would state:

41. INDEMNITY. To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless the Owner and Contractor . . . from and against claims, damages, losses and expenses . . . arising out of or resulting from performance of Subcontractor's Work[.]

Significantly, common law establishes that defendant is strictly liable for damages arising from blasting, even without an indemnity clause. Accordingly, the indemnity clause when redacted simply states the common law rule of strict liability.

We also note that in *International Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 315, 385 S.E.2d 553, 555 (1989), this Court considered a similar indemnification clause stating in relevant part:

The Builder shall indemnify and hold harmless the Owner . . . against all claims, losses, and expenses . . . arising out of or resulting from the performance of the work, provided that any such claim, damage, loss or expense . . . is caused in whole or in part by any negligent act or omission of the Builder . . . regardless of whether or not it is caused in part by a party indemnified hereunder.

This Court held that removing the phrase "regardless of whether or not it is caused in part by a party indemnified hereunder" would make the clause enforceable:

> By striking the offending language the Court does not rewrite the contract or substitute its own terms in the provision for those of the parties. We merely sever the portion that is void as against public policy from an otherwise valid indemnity provision.

*Id.* at 316, 385 S.E.2d at 555. As in *International Paper*, any problem with the indemnity clause can be cured by removal of the offending phrase. Accordingly, we conclude that the trial court erred by entering summary judgment in favor of defendant on plaintiff's claim based on contractual indemnification. Assuming that the evidence at trial were to show that the contract is valid in all other respects, the indemnification clause may be enforced.

---

[4] Finally, plaintiff argues that the trial court erred by quashing its subpoenas for FAEC. We conclude that plaintiff failed to properly preserve this issue for our review.

In February 2004 plaintiff issued a document subpoena for FAEC, seeking "[a]ll documents in your possession, custody, or control, related to the [NCDOT] Project No. 8.1402210, . . . including, but not limited to, all correspondence with Piedmont Drilling & Blasting, Inc., Ranger Insurance Company, Park Construction Corp., and Vecellio & Grogan, Inc." FAEC produced certain documents from its file, without objection from Piedmont. However, in regards to the remainder of FAEC's file, Piedmont moved to quash the subpoena, arguing that it "is improper discovery of expert consultant materials under Rule 26; that it is overly broad and unduly burdensome; that it encompasses materials prepared in anticipation of litigation for Piedmont." Piedmont's motion to quash was granted by the trial court in an order concluding in pertinent part that:

> The Court has . . . reviewed the privilege log and the documents actually produced to plaintiff from the files of [FAEC] . . . and has conducted an *in camera* review of those documents withheld from production in response to the subpoena.

> Based upon the foregoing, the Court finds and concludes that the documents withheld from production in response to the subpoena were documents prepared by [FAEC] . . . in anticipation of potential litigation with the plaintiff; . . . and that the ma-

terials withheld from production are protected by the work-product doctrine. . . .

It is, therefore, ORDERED that the objections of the defendants to the subpoena are sustained and the motions to quash are allowed as to those documents withheld and listed in the privilege log, and that the documents presented for *in camera* review shall be sealed and maintained with the case file. . . .

On appeal, plaintiff challenges the trial court's ruling on defendant's motion to quash the subpoena. However:

Rule 9(a) [of the North Carolina Rules of Appellate Procedure] provides that 'copies of all other papers filed and statements of all other proceedings had in the trial court which are necessary to an understanding of all errors' should be included in the record on appeal. N.C.R. App. [P]. 9(a)(1)(j) (2005). As [plaintiff] failed to include a copy of the [documents withheld by FAEC], we do not address this issue.

*County of Jackson v. Nichols*, 175 N.C. App. 196, 201, 623 S.E.2d 277, 281 (2005) (emphasis added) (citations omitted). Plaintiff's appeal from this order is dismissed.

We reverse the trial court's entry of summary judgment in favor of defendant, and dismiss plaintiff's appeal from the order quashing its subpoena.

Reversed in part and Dismissed in part.

Judges HUNTER and McCULLOUGH concur.