IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-1427

Filed: 4 September 2018

Wake County, No. 15 CVS 1191

FRANCISCO FAGUNDES and DESIREE FAGUNDES, Plaintiffs,

v.

AMMONS DEVELOPMENT GROUP, INC.; EAST COAST DRILLING & BLASTING, INC.; SCOTT CARLE; and JUAN ALBINO, Defendants.

Appeal by Plaintiff from order entered 9 October 2017 by Judge A. Graham Shirley, II in Superior Court, Wake County. Heard in the Court of Appeals 4 June 2018.

*The Jernigan Law Firm, by Leonard T. Jernigan, Jr. and Anthony L. Lucas, for Plaintiff-Appellant Francisco Fagundes.*

*Ragsdale Liggett PLLC, by Amie C. Sivon and John M. Nunnally, for Defendant-Appellee Ammons Development Group, Inc.*

McGEE, Chief Judge.

Francisco Fagundes ("Plaintiff") appeals an order entered 9 October 2017 granting summary judgment in favor of defendant East Coast Drilling & Blasting, Inc., defendant Scott Carle, and defendant Juan Albino (collectively, "the other defendants"). Plaintiff appeals the 9 October 2017 order for the sole purpose of appealing an order entered 8 December 2015 granting a motion to dismiss in favor of defendant Ammons Development Group, Inc. ("Defendant"). Plaintiff has no

outstanding claims against the other defendants.[1]  For the reasons discussed below, we reverse the trial court's 8 December 2015 order.

## I.  Factual and Procedural Background

Defendant was the developer of Heritage East ("Heritage East" or "the construction site"), a planned residential subdivision in Wake Forest, North Carolina. Defendant hired East Coast Drilling & Blasting, Inc., ("East Coast") to provide the services of onsite drilling, blasting, and crushing of rock during the construction of Heritage East.  Plaintiff was employed by East Coast as a heavy equipment operator in East Coast's rock crushing division.

Members of East Coast's blasting crew were blasting a certain area within the construction site on or about 25 June 2013.  Plaintiff was also working at the construction site that day.  According to both Plaintiff and Defendant, Juan Albino ("Albino"), a blaster employed by East Coast, misinformed Plaintiff that Plaintiff was "located in a position that would be safe from flying debris and flyrock [that would be dislodged as a result of an imminent blast]."  When Albino subsequently conducted the blast, flyrock and debris flew from the blast site with tremendous force.  A heavy piece of rock struck Plaintiff's left leg, causing injuries.

---

[1] Plaintiff Desiree Fagundes filed a voluntary dismissal in this action on 13 October 2015.

Plaintiff filed a complaint against Defendant, East Coast, Albino, and Scott Carle, an East Coast executive officer, on 29 January 2015. In addition to various claims asserted against the other defendants, Plaintiff alleged Defendant was "strictly liable for the damages sustained by Plaintiff . . . that were proximately caused by the ultrahazardous activity of blasting." Defendant filed an answer and motion to dismiss Plaintiff's complaint on 20 April 2015. Citing N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), Defendant first asserted that Plaintiff failed to state a valid claim for relief. Among its additional defenses, Defendant further asserted that "[t]he doctrine of strict liability . . . does not apply to cases where injury results to those who have reason to know of the risk which makes the undertaking ultrahazardous and bring themselves within the area which will be endangered by its miscarriage." Defendant alleged that

> [a]s an employee working in the field of blasting, Plaintiff
> [] consented to the dangers and risks associated with the
> field of blasting and cannot recover against Defendant [] on
> a claim of strict liability. Plaintiff[] knowingly put himself
> at risk and was an active participant. Further, Plaintiff[]
> was warned about the risks associated with blasting and
> was trained regarding the risks associated with blasting.

The trial court granted Defendant's motion to dismiss on 8 December 2015. Plaintiff appealed the dismissal of his strict liability claim against Defendant, but this Court dismissed that appeal as interlocutory because Plaintiff "continue[d] to assert unadjudicated claims against [the other] defendants[,]" and Plaintiff did not

specifically contend the interlocutory appeal affected a substantial right that would be lost absent immediate review. *See Fagundes v. Ammons Development Group, Inc.*, ___ N.C. App. ___, ___, 791 S.E.2d 876, ___ (2016) (unpublished).

The trial court subsequently denied summary judgment on Plaintiff's strict liability claim against the other defendants and Plaintiff's willful, wanton, and reckless negligence claim against Albino. On appeal, this Court reversed. *See Fagundes v. Ammons Development Group, Inc.*, ___ N.C. App. ___, 796 S.E.2d 529 (2017) ("*Fagundes I*"). We concluded that "because [Plaintiff] was injured in a work-related accident, the [North Carolina] Workers' Compensation Act provide[d] the exclusive remedy for his injuries, and the trial court lacked jurisdiction to adjudicate his strict liability claims against his employer." *Id.* at ___, 796 S.E.2d at 533. This Court also concluded the trial court erroneously denied summary judgment with respect to Plaintiff's claim against Albino for willful, wanton, and reckless negligence. *Id.* at ___, 796 S.E.2d at 533. On remand, the trial court entered an order on 9 October 2017 granting summary judgment for the other defendants on Plaintiff's strict liability claim, and granting summary judgment for Albino on Plaintiff's claim for willful, wanton, and reckless negligence. Consequently, Plaintiff concedes the other defendants "are no longer aggrieved parties." Plaintiff now appeals from the 9 October 2017 order for the purpose of appealing the 8 December 2015 order dismissing Plaintiff's strict liability claim against Defendant.

## II. Motion to Dismiss

### A. *Standard of Review*

> A motion to dismiss under [N.C. Gen. Stat. § 1A-1, Rule] 12(b)(6) is the usual and proper method of testing the legal sufficiency of [a] complaint. In reviewing a trial court's Rule 12(b)(6) dismissal, the appellate court must inquire whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.

*Newberne v. Department of Crime Control & Pub. Safety*, 359 N.C. 782, 784, 618 S.E.2d 201, 203 (2005) (citations and internal quotation marks omitted). "A complaint may be dismissed pursuant to Rule 12(b)(6) if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 225, 695 S.E.2d 437, 440 (2010) (citation and quotation marks omitted). "The complaint must be liberally construed, and [a] court should not dismiss the complaint unless it appears *beyond a doubt* that the plaintiff could not prove *any* set of facts to support his claim which would entitle him to relief." *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 480, 593 S.E.2d 595, 598 (2004) (citation and quotation marks omitted) (emphases added). *See also Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 428 (2007) ("The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when . . . *all the allegations included*

*therein are taken as true.*" (citation omitted) (emphasis added)); *Acosta v. Byrum*, 180 N.C. App. 562, 567, 638 S.E.2d 246, 250 (2006) ("When analyzing a 12(b)(6) motion, the court . . . is concerned with the law of the claim, not the accuracy of the facts that support [the] [] motion." (citation omitted)). "This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003).

B. *Analysis*

A Rule 12(b)(6) motion to dismiss "is addressed to whether the facts alleged in the complaint, when viewed in the light most favorable to the plaintiff[], give rise to a claim for relief on any theory." *Ford v. Peaches Entertainment Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986) (citation omitted). Importantly, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claim." *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 607, 659 S.E.2d 442, 448 (2008).

In the present case, Plaintiff's complaint alleged the following in support of his strict liability claim against Defendant:

> 58. Blasting is an ultrahazardous activity.
>
> 59. Defendant [] knew that blasting is an ultrahazardous activity.
>
> 60. Defendant [] hired [d]efendant East Coast to perform

the ultrahazardous activity of blasting at the Heritage East development site, including the area in question.

61. In hiring [d]efendant East Coast to perform the ultrahazardous activity of blasting, Defendant [] ha[d] a non-delegable duty for the safety of Plaintiff [].

62. Defendant [] is strictly liable for the damages sustained by Plaintiff [] that were proximately caused by the ultrahazardous activity of blasting.

63. As a direct and proximate result of the ultrahazardous activity of blasting by Defendant [] as described herein, Plaintiff [] suffered the injuries and sustained the damages set forth above, and is entitled to compensatory damages[.]

In a memorandum of law filed by Defendant in support of its motion to dismiss, Defendant contended Plaintiff's complaint "disclosed facts which necessarily defeat Plaintiff's claim against [Defendant]." Defendant argued certain facts alleged in the complaint made it "clear that Plaintiff *assumed the risk of being injured by a blast* and as such Plaintiff has not stated a claim for which relief can be granted." (emphasis added). Defendant argued that Plaintiff "voluntarily exposed himself to danger both generally (by accepting employment with a blasting company[]) and specifically (by being at the blast [that occurred on [25 June] 2013[]).")

On appeal, Defendant asserts that an employee of a blasting company has no legally cognizable strict liability claim – against *any* third party – for blasting-related injuries sustained while at work. According to Defendant, in this context, "assumption of risk" is implicit in the contract of employment and bars recovery on

the basis of strict liability as a matter of law. Thus, Defendant submits that, in the present case, "Plaintiff, an employee of a blasting company, has no recognized strict liability claim against the developer [] which hired [Plaintiff's] [employer]." Defendant further argues that, even if Plaintiff is entitled to assert a strict liability claim in this context, the affirmative defense of assumption of risk applies to Plaintiff's claim and, based on the allegations in Plaintiff's complaint, bars recovery as a matter of law. We disagree.

Ordinarily, "one who employs an independent contractor is not liable for the independent contractor's acts." *Reynoso v. Mallard Oil Co.*, 223 N.C. App. 58, 61, 732 S.E.2d 609, 611 (2012) (citation omitted). "However, if the work to be performed by [an] independent contractor is either (1) ultrahazardous or (2) inherently dangerous, and the employer either knows or should have known that the work is of that type, liability *may* attach despite the independent contractor status." *Kinsey v. Spann*, 139 N.C. App. 370, 374, 533 S.E.2d 487, 491 (2000) (emphasis added).

"Blasting is ultrahazardous because high explosives are used and it is impossible to predict with certainty the extent or severity of its consequences." *Guilford Insurance Co. v. Blythe Brothers Co.*, 260 N.C. 69, 74, 131 S.E.2d 900, 904 (1963) (citation and quotation marks omitted). In *Guilford*, our Supreme Court held that, as a result of the unpredictable and unpreventable dangers associated with blasting, "[b]lasting operations . . . must pay their own way. . . . The principle of strict

or absolute liability for extrahazardous [sic] activity thus is the only sound rationalization." *Id.* (citation and quotation marks omitted). The Court subsequently described strict liability for blasting as

> [t]he rule . . . that one who is lawfully engaged in blasting operations is liable *without regard to whether he has been negligent,* if by reason of the blasting he causes direct injury to neighboring property or premises by casting rocks or debris thereon or by concussion or vibrations set in motion by the blasting.

*Trull v. Well Co.*, 264 N.C. 687, 691, 142 S.E.2d 622, 624 (1965) (emphasis added). "To date, blasting is the only activity recognized in North Carolina as ultrahazardous. Consequently, those responsible are held strictly liable for damages, mainly because the risk of serious harm cannot be eliminated with reasonable care." *Jones v. Willamette Industries, Inc.*, 120 N.C. App. 591, 596, 463 S.E.2d 294, 298 (1995) (citation omitted).

Our appellate courts have distinguished between ultrahazardous activities, which give rise to strict liability, and "inherently dangerous activities," which are governed by principles of negligence. "Unlike ultrahazardous activities, inherently dangerous activities are susceptible to effective risk control through the use of adequate safety precautions." *Woodson v. Rowland*, 329 N.C. 330, 351, 407 S.E.2d 222, 234 (1991) (citation omitted). "[T]aking the necessary safety precautions can demonstrate reasonable care protecting the responsible party from liability under a negligence standard." *Id.* This Court stated in *Kinsey* that, in contrast to inherently

dangerous activity claims, in cases involving ultrahazardous activities, "the employer is *strictly* liable for any harm that proximately results [from the ultrahazardous activity]. In other words, he is liable even if due care was exercised in the performance of the activity." *Kinsey*, 139 N.C. App. at 374, 533 S.E.2d at 491 (citations omitted) (emphasis in original).

> Generally, the [North Carolina] Workers' Compensation Act provides the exclusive remedy for an employee injured in a workplace accident. However, in *Woodson*, [] our Supreme Court created an exception allowing an employee to assert a [civil] claim against an employer for damages when the employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees[.]

*Arroyo v. Scottie's Professional Window Cleaning,* 120 N.C. App. 154, 158-59, 461 S.E.2d 13, 16 (1995) (citations and internal quotation marks omitted); *see also Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 239-40, 424 S.E.2d 391, 395 (1993). The "*Woodson* exception" applies not only to an employee's direct employer but also to "[o]ne who employs an independent contractor to perform an inherently dangerous activity[,] [and the principal hiring entity] may not delegate to the independent contractor the duty to provide for the safety of others[.]" *Woodson*, 329 N.C. at 352, 407 S.E.2d at 235. "The party that employs the independent contractor has a continuing responsibility to ensure that adequate safety precautions are taken." *Id.* Accordingly, under *Woodson*, a party that hires an independent contractor to perform an inherently dangerous activity, and "[knows] of the circumstances creating the

danger," is liable to employees of the independent contractor if the principal employer fails to "exercise due care to see that [the employees] [are] provided a safe place in which to work and proper safeguards against any dangers as might be incident to the work." *Id.* at 356-57, 407 S.E.2d at 238.

We note that *Woodson* involved an employee who was killed while constructing a trench, an activity that may or may not be deemed *inherently dangerous* depending "on the particular trench being dug and the pertinent circumstances surrounding the digging." *Id.* at 356, 407 S.E.2d at 237; *see also O'Carroll v. Texasgulf, Inc.*, 132 N.C. App. 307, 313, 511 S.E.2d 313, 318 (1999) ("Although the determination of whether an activity is inherently dangerous is often a question of law, whether a particular *trenching* situation constitutes an inherently dangerous activity *usually* presents a question of fact and should be addressed on a case by case basis[.]" (citations omitted) (emphases in original)). Although *Woodson* involved an inherently dangerous activity claim, our Supreme Court stated in its opinion that

> [p]arties whose blasting proximately causes injury are held strictly liable for damages, largely because reasonable care cannot eliminate the risk of serious harm. Because these activities are extremely dangerous, they must "pay their own way," and the parties who are responsible must bear the cost regardless of whether they have been negligent.

*Id.* at 350-51, 407 S.E.2d at 234 (citations omitted). In the present case, Plaintiff contends this language in *Woodson* supports his strict liability claim against Defendant. *See also id.* at 352, 407 S.E.2d at 235 ("The rule imposing liability on one

- 11 -

who employs an independent contractor [to perform an inherently dangerous activity] applies whether [the activity] involves an appreciable and foreseeable danger *to the workers employed* or to the public generally." (citation and internal quotation marks omitted) (second alteration in original) (emphasis added)). Defendant responds that *Woodson* "did not address whether the employees of independent contractors [are] included within the protection of strict liability claims" or "whether a strict liability claim can be brought by an employee of a company engaged in ultrahazardous activities against the entity who hired the company." Defendant observes that "[n]o North Carolina court has found that [a] hiring entity is strictly liable for an injury to an employee of the company who conducted an ultrahazardous activity." We observe, however, that Defendant also has not cited any North Carolina case law concluding a hiring entity *cannot*, as a matter of law, be strictly liable to employees of its independent contractor for blasting-related injuries.

In cases predating the North Carolina Workers' Compensation Act ("WCA"), *see* N.C. Gen. Stat. § 97-1 *et seq.*, our Supreme Court repeatedly held that parties responsible for blasting operations could not avoid liability for harms associated with blasting merely by employing an independent contractor to do the work. *See Watson v. R.R.*, 164 N.C. 176, 182, 80 S.E. 175, 177 (1913); *Arthur v. Henry*, 157 N.C. 393, 402, 73 S.E.2d 206, 209-10 (1911); *Hunter v. R.R.*, 152 N.C. 682, 687-89, 68 S.E. 237,

239-40 (1910).  With respect to *employees* of an independent contractor, our Supreme

Court stated in *Greer v. Construction Co.*, 190 N.C. 632, 130 S.E. 739 (1925):

> The rule exempting an owner or contractor from liability
> for the negligence of an independent contractor to a
> stranger or third person does not necessarily exempt such
> owner or contractor from liability to the servant or
> employee of the independent contractor who is injured
> while engaged in work for the ultimate benefit of such
> owner or contractor.  There is a relationship between the
> owner or contractor and the servant or employee of the
> independent contractor which may impose upon the former
> duties which the law does not impose upon him with
> respect to strangers or third persons.  The law would not
> be just to itself or to those who have a right to rely upon it
> for protection, if an owner or contractor could, in all cases,
> by committing the work in which he is interested to an
> independent contractor, secure absolute exemption from
> all liability to those who by their labor and by methods and
> under circumstances contemplated when the original
> contract was made, contribute to its full performance.

*Greer*, 190 N.C. at 636, 130 S.E. at 742.  Recognizing that "certain exceptions must

be made to the general rule exempting owners or contractors from liability for the

negligence of an independent contractor[,]" the Court further observed that

> [w]here the thing contracted to be done is necessarily
> attended with danger, however skillfully and carefully
> performed, or is intrinsically dangerous, it is held that the
> party who lets the contract to do the act cannot thereby
> escape responsibility for any injury resulting from its
> execution, although the act to be performed may be lawful.

*Id.*  (citation and quotation marks omitted).

Defendant dismisses *Hunter*, *Arthur*, *Watson*, and *Greer* as "inapplicable" to the present case because they preceded both the WCA and the adoption of strict liability for blasting in *Guilford*. Regardless, we find these cases useful for their discussions about the relationship between the employer of an independent contractor and third parties, *including* employees of the independent contractor, when the work of the independent contractor is "necessarily attended with danger, however skillfully and carefully performed[.]" *Greer*, 190 N.C. at 636, 130 S.E. at 742; *see also Watson*, 164 N.C. at 182, 80 S.E. at 177 ("[T]he doctrine is well established and is applicable here that the work at which the plaintiff [employee] was engaged[, blasting,] is so intrinsically dangerous that protection from liability will not be afforded by an independent contract[.]"); *Arthur*, 157 N.C. at 402, 73 S.E.2d at 210 ("[W]e must hold that the work to be done[, blasting,] was of such character that the defendant [quarry owner] could not protect himself by the lease he made, and that he is liable for the acts of the [independent contractor] in the prosecution of the work.").

Since *Guilford* – which did not involve personal injury or an employment-related claim – few cases in our State have applied the principle of strict liability for blasting. References to strict liability for blasting most often appear in *dicta* in cases involving inherently dangerous activity claims. In mentioning strict liability for blasting, however, our appellate courts have consistently indicated that a party "responsible for," or "engaged in," the ultrahazardous activity is strictly liable for

harm caused by the blasting. *See, e.g., Woodson,* 329 N.C. at 350-51, 407 S.E.2d at 234 ("Parties whose blasting proximately causes injury are held strictly liable for damages, largely because reasonable care cannot eliminate the risk of serious harm. Because these activities are extremely dangerous, they must 'pay their own way,' and *the parties who are responsible* must bear the cost regardless of whether they have been negligent." (citations omitted) (emphasis added)); *Trull,* 264 N.C. at 691, 142 S.E.2d at 624 ("The rule . . . is that *one who is lawfully engaged in* blasting operations is liable without regard to whether he has been negligent, if by reason of the blasting he causes direct injury to neighboring property or premises[.]" (emphasis added)); *Jones,* 120 N.C. App. at 596, 463 S.E.2d at 298 ("To date, blasting is the only activity recognized in North Carolina as ultrahazardous. Consequently, *those responsible* are held strictly liable for damages, mainly because the risk of serious harm cannot be eliminated with reasonable care." (emphasis added)). Our Supreme Court stated in *Trull* that "the rule of liability without allegation and proof of negligence . . . casts the risk of the venture [of blasting] on *the person who introduces the peril in the community." Trull,* 264 N.C. at 691, 142 S.E.2d at 624 (emphasis added). Our limited precedent on strict liability for blasting thus suggests that strict liability may attach to any person or entity found "responsible for" blasting, and our pre-WCA case law suggests that parties "responsible for" blasting may include one that hires an independent contractor to conduct blasting operations.

Our case law also requires an element of proximate causation between the blasting operations at issue and the injury or damages alleged. *See, e.g.*, *Trull*, 264 N.C. at 691, 142 S.E.2d at 624 (holding "that one who is lawfully engaged in blasting operations is [strictly] liable . . . if by reason of the blasting he *causes direct injury*[.]" (emphasis added)); *Kinsey*, 139 N.C. App. at 374, 533 S.E.2d at 491 (noting an employer engaged in blasting "is *strictly* liable for any harm that *proximately results*." (citation omitted) (second emphasis added)); *Cody v. Dept. of Transportation*, 45 N.C. App. 471, 474, 263 S.E.2d 334, 335-36 (1980) ("Because of the inherently dangerous or ultrahazardous nature of blasting, when a contractor employed by the Department of Transportation uses explosives in the performance of his work, he is primarily and strictly liable for any damages *proximately resulting therefrom*." (citation and internal quotation marks omitted) (emphasis added)).

Here, Plaintiff's complaint specifically alleged that Defendant "*hired [] East Coast to perform the ultrahazardous activity of blasting* at the Heritage East development site, including the area in [which Plaintiff was injured]." (emphasis added). Plaintiff's complaint also alleged that "*[a]s a direct and proximate result* of the ultrahazardous activity of blasting by Defendant . . . , Plaintiff . . . suffered the injuries and sustained the damages set forth [in the complaint][.]" (emphasis added). We conclude that, under existing North Carolina law, Plaintiff has "allege[d] the substantive elements of a valid claim[]" for strict liability for blasting. *See Acosta*,

180 N.C. App. at 566-67, 638 S.E.2d at 250. Whether Plaintiff can successfully prove Defendant was or should be considered "responsible for" the blast that injured Plaintiff remains to be determined, but for purposes of Rule 12(b)(6), we find it sufficient that Plaintiff alleged Defendant directly solicited East Coast's blasting services, and that a blast conducted pursuant to Defendant's contract with East Coast proximately caused Plaintiff's injuries.

Recently, in a separate appeal by the other defendants in this matter, this Court determined that the WCA provides the exclusive remedy for an employee of a blasting company who is injured by blasting and seeks to recover against his employer, *i.e.*, the blasting company. *See Fagundes I*, ___ N.C. App. at ___, 796 S.E.2d at 532-33; *see also Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003) ("As this Court has often discussed, the [WCA] was created to ensure that injured employees receive sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence. In exchange for these limited but assured benefits, the employee is generally barred from suing the employer for potentially larger damages in civil negligence actions and is instead limited exclusively to those remedies set forth in the [WCA]." (citations and internal quotation marks omitted)). After observing in *Fagundes I* that "the workers' compensation system [itself] imposes strict liability on employers[,]" this Court

expressly declined to "create a new exception to the [WCA] because of the high risk of serious injury in these types of ultrahazardous jobs and the robust common law remedies that were available to workers injured in these types of jobs before our General Assembly created the workers' compensation system." *Fagundes I*, ___ N.C. App. at ___, 796 S.E.2d at 533. We concluded that, notwithstanding the ultrahazardous nature of blasting, "because [Plaintiff] was injured in a work-related accident, the [WCA] provide[d] the exclusive remedy for his injuries, and the trial court lacked jurisdiction to adjudicate his strict-liability claims *against his employer*." *Id.* at ___, 796 S.E.2d at 533 (emphasis added). In the present case, Defendant urges us to "reject Plaintiff's additional attempt to expand strict liability" by recognizing a strict liability claim against an entity that hires an independent contractor to provide blasting services by an employee of the independent contractor injured by blasting.

*Fagundes I* involved Plaintiff's strict liability claim against his direct employer and co-employee only. *See Estate of Gary Vaughn v. Pike Electric, LLC*, 230 N.C. App. 485, 494, 751 S.E.2d 227, 233 (2013) ("Under the [WCA's] exclusivity provision, a worker is generally barred from bringing an action in our courts of general jurisdiction *against either his employer or a co-employee*. Instead, the worker must pursue his or her action before the North Carolina Industrial Commission." (internal citation omitted) (emphasis added)). This Court explicitly characterized the issue on appeal in *Fagundes I* as being "whether employees injured while working in

'ultrahazardous' jobs may sue *their employers* in the court system despite the provisions of the [WCA] requiring those claims to be pursued [before] the Industrial Commission." *Id.* at ___, 796 S.E.2d at 531 (emphasis added). While this Court suggested our analysis in *Fagundes I* encompassed employee claims "stemming from workplace injuries[,]" we also acknowledged language in *Woodson* that "discussed how a general contractor could be held strictly liable for injuries caused by a subcontractor engaged in an ultrahazardous activity, such as blasting." *Id.* at ___, 796 S.E.2d at 532 (citation omitted). In requiring Plaintiff to bring his claims against East Coast before the Industrial Commission, we stressed that "the workers' compensation system [already] imposes strict liability *on employers*." *Id.* at ___, 796 S.E.2d at 533 (emphasis added).

"To be entitled to maintain a proceeding for workers' compensation, the claimant must be, in fact and in law, *an employee of the party from whom compensation is claimed*." *Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 383, 364 S.E.2d 433, 437 (1988) (citations omitted) (emphasis added). "It is well established that in order for a claimant to recover under the Workers' Compensation Act, the employer-employee relationship must exist at the time of the claimant's injury." *Ramey v. Sherwin-Williams Co.*, 92 N.C. App. 341, 343, 374 S.E.2d 472, 473 (1988); *see also Hughart v. Dasco Transp., Inc.*, 167 N.C. App. 685, 689, 606 S.E.2d 379, 382 (2005) ("The claimant has the burden of proving that an employer-employee

relationship existed at the time that the injury by accident occurred." (citation omitted)). "The question as to whether an employer-employee relationship existed at the time of injury is a question of jurisdictional fact . . . [that] is reviewable by this Court on appeal." *Durham v. McLamb*, 59 N.C. App. 165, 168, 296 S.E.2d 3, 5 (1982) (noting that, on appeal, "it is incumbent on this Court to review and consider *all of the evidence of record* and make an independent finding [as to the existence of an employer-employee relationship]." (citations omitted) (emphasis added)); *see also Postell v. B&D Const. Co.*, 105 N.C. App. 1, 10, 411 S.E.2d 413, 418 (1992) (listing "several factors that are indicative of an employee/employer relationship."). "[T]he Industrial Commission has no jurisdiction to apply the [WCA] to a person who is not subject to its provisions." *Youngblood*, 321 N.C. at 383, 364 S.E.2d at 437; *see also Spencer v. Johnson & Johnson Seafood,* 99 N.C. App. 510, 516, 393 S.E.2d 291, 294 (1990) (concluding that, because plaintiff was not an employee of defendant, Industrial Commission "was without jurisdiction to render an award under the [WCA].").

In the present case, nothing in Plaintiff's complaint suggests Plaintiff and Defendant had an employer-employee relationship at the time of Plaintiff's blasting-related injuries. *See McCraw v. Mills, Inc.*, 233 N.C. 524, 530, 64 S.E.2d 658, 662 (1951) (holding employee of independent contractor was not an employee of party that hired the independent contractor). Assuming *arguendo* that (1) Defendant *may* be

subject to strict liability for Plaintiff's injuries *if* Defendant was "responsible for" its contractor's blasting operations, and (2) no employer-employee relationship existed between Plaintiff and Defendant when Plaintiff was injured, Plaintiff's only avenue for pursuing a strict liability claim against Defendant would be a civil action. As discussed above, it remains to be determined whether Defendant was "responsible for" the blast that injured Plaintiff. Moreover, Plaintiff's complaint does not show on its face that an employer-employee relationship existed between Plaintiff and Defendant. We therefore find it premature to determine whether this Court's reasoning in *Fagundes I* regarding the WCA's exclusivity provisions necessarily defeats Plaintiff's strict liability claim against Defendant.[2]

---

[2] We also note that the defendants in *Fagundes I* appealed the denial of their motions for summary judgment, not an order granting or denying a motion to dismiss.

> The distinction between a Rule 12(b)(6) motion to dismiss and a motion for summary judgment is more than a mere technicality. When considering a 12(b)(6) motion to dismiss, the trial court need only look to *the face of the complaint* to determine whether it reveals an insurmountable bar to [the] plaintiff's recovery. By contrast, when considering a summary judgment motion, the trial court must look at more than the pleadings; it must also consider additional matters such as affidavits, depositions and other specified matter outside the pleadings. Summary judgment is proper only when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law.

*Locus v. Fayetteville State University*, 102 N.C. App. 522, 527, 402 S.E.2d 862, 866 (1991) (citations omitted) (emphasis in original). "[T]he Rule 12(b)(6) motion is addressed solely to the sufficiency of the complaint and *does not prevent summary judgment from subsequently being granted based on material outside the complaint.*" *Industries, Inc. v. Construction Co.*, 42 N.C. App. 259, 263, 257 S.E.2d 50, 53-54 (1979) (emphasis added).

Defendant offers various arguments why "[t]his Court *should* find[,] like courts in other states, and as laid out in American Jurisprudence, that employees of a blasting company cannot bring a strict liability claim against the entity who hired their company to do the work." (emphasis added). Defendant argues Plaintiff, as an employee of a blasting company, does not "fall within the scope of persons designed to be protected by strict liability." Citing case law from other jurisdictions, Defendant contends "no employee of a blasting company, *no matter his position*, should be entitled to bring a strict liability claim against a developer when the employee is at a blasting site in the course and scope of employment and injured by a blast caused by his employer." (emphasis added). According to Defendant, the mere fact that Plaintiff worked for a blasting company shows Plaintiff knew or should have known of the risks of blasting. Defendant also characterizes Plaintiff as a "participant" in the 25 June 2013 blast, rather than an "innocent bystander[][,]" because, *inter alia*, "[Plaintiff's] work in the rock crushing division involved him being on site when blasting occurred" and "[Plaintiff] was in the course and scope of his employment when the [25 June 2013] blast occurred." Defendant speculates that "employees involved in ultrahazardous activities directly benefit from the dangerous work performed by their company and presumably their compensation reflects the danger of the work." Defendant further submits it should not be liable to employees of its

independent contractor because "[a] developer has a different role in a project than a[] [land]owner or a general contractor."

Whatever the factual accuracy of Defendant's contentions, we find them inappropriate bases for dismissing Plaintiff's complaint pursuant to Rule 12(b)(6). We are not persuaded that the mere fact of Plaintiff's employment by East Coast, or Plaintiff's mere presence "on site" at the time of the blast that injured him, demonstrate "*to a certainty* that [] [P]laintiff is entitled to no relief under any state [sic] of facts which could be proved in support of [his] claim." *See Ferguson v. Williams*, 92 N.C. App. 336, 339, 374 S.E.2d 438, 439 (1988) (emphasis added). Even assuming that an employee whose job *involves blasting* cannot bring a strict liability claim for employment-related blasting injuries, Plaintiff's complaint does not establish as a matter of law that his job with East Coast involved blasting or that, as Defendant contends, Plaintiff was not an "innocent party" under the circumstances surrounding his injuries.

Plaintiff's complaint does not establish on its face that Plaintiff, who did not work in East Coast's blasting division, was "involved," "engaged," or "a participant" in the ultrahazardous activity of blasting. Plaintiff alleged he was employed at all relevant times as a heavy equipment operator in East Coast's rock crushing division, and, on the date of the blast that caused his injuries, he "was working in the course and scope of his employment *as a heavy equipment operator in the rock crushing*

*division of [] East Coast.*" (emphasis added). According to Plaintiff's complaint, the Heritage East development comprised approximately 2,000 acres of land, and "substantial portions . . . were under construction at all times relevant[.]" The complaint does not indicate where, within the larger construction site, Plaintiff typically worked; how long, prior to 25 June 2013, he was employed by East Coast; or whether and to what extent Plaintiff's job in the rock crushing division required him to work with blasters or around blasting. The complaint alleged that, immediately before the 25 June 2013 blast, East Coast's blaster-in-charge "misinformed Plaintiff . . . that Plaintiff . . . was located in a position that would be safe from flying debris and flyrock." We are unable to determine whether Plaintiff knew, or should have known, he was at risk of serious injury despite being (as he believed) "outside the blasting area." Additionally, because Plaintiff's complaint reveals no information about Plaintiff's salary or other employment benefits, we are unable to determine at this stage whether, as Defendant suggests, Plaintiff's compensation may have reflected the ultrahazardous nature of blasting. *See Klingstubbins SE., Inc. v. 301 Hillsborough St. Partners, LLC*, 218 N.C. App. 256, 262, 721 S.E.2d 749, 753 (2012) (noting "questions of . . . material facts [] cannot be resolved under Rule 12(b)(6).").

Given our limited case law on strict liability for blasting, we cannot conclude as a matter of law that Plaintiff falls outside "the scope of persons designed to be protected by strict liability[]" in this context. This Court's holding in *Boston v. Webb*,

73 N.C. App. 457, 326 S.E.2d 104 (1985), is instructive. In *Boston*, the plaintiff sued a city official for issuing a press release containing allegedly defamatory information about the plaintiff. The defendant successfully moved to dismiss the plaintiff's complaint under Rule 12(b)(6) on the basis that the plaintiff's complaint showed the defendant was acting within the scope of his authority as a public official when he issued the press release, and that the official's communications were therefore absolutely privileged. This Court reversed, finding it was

> too early in the plaintiff's action for us to say to a certainty that the plaintiff is entitled to no relief under any set of facts he might prove in support of his claim. We are unable to determine at this point whether [the defendant] was acting within the scope of his authority as [c]ity [m]anager when he published [the] news release. Similarly, from only the facts as found in the complaint, we cannot say whether all of the matter contained in the news release was privileged. . . . [Further], the defense of privilege is based upon the premise that some information, although defamatory, is of sufficient public or social interest to entitle the individual disseminating the information to protection against an action for liable. Whether such communications will be protected generally has been determined by the amount of public interest in the matter communicated.

*Boston*, 73 N.C. App. at 460-61, 326 S.E.2d at 106. This Court concluded the defendant's motion to dismiss was improperly granted "precisely because the public's interest in the matter and [the defendant's] right to relay it as he did remain[ed] to be determined." *Id.* at 461, 326 S.E.2d at 106. In the present case, we similarly find it too soon to determine whether the totality of the circumstances surrounding

Plaintiff's injuries removed him from the ambit of strict liability protection that generally applies to third parties injured by blasting.

Defendant argues in the alternative that the defense of assumption of risk should apply to strict liability claims for ultrahazardous activities and, in this case, requires dismissal of Plaintiff's complaint. *See Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 270, 333 S.E.2d 236, 238 (1985) ("When [a] complaint states a valid claim but also discloses an unconditional affirmative defense which defeats the asserted claim, [] the [12(b)(6)] motion will be granted and the action dismissed." (citation omitted)).  As Defendant acknowledges, "[n]o North Carolina cases directly address the point of how assumption of the risk relates to a claim based on [a] defendant's strict liability for damages arising from an ultra[]hazardous activity."  *Vecellio & Grogan, Inc. v. Piedmont Drilling & Blasting, Inc.*, 183 N.C. App. 66, 70, 644 S.E.2d 16, 19 (2007) (declining to address availability of assumption of risk defense for strict liability claims arising from ultrahazardous activities, where it was unclear "whether the evidence presented at trial on remand [would] even present a factual issue of assumption of risk[.]").

"The two elements of the common law defense of assumption of risk are:  (1) actual or constructive knowledge of the risk, and (2) consent by the plaintiff to assume that risk."  *Allred v. Capital Area Soccer League, Inc.*, 194 N.C. App. 280, 287, 669 S.E.2d 777, 781 (2008) (citation omitted); *see also Batton v. R.R.*, 212 N.C. 256, 268,

193 S.E. 674, 684 (1937) ("Assumption of risk is founded upon knowledge of [an] employee, either actual or constructive, of the risks and hazards to be encountered in the performance of his duties and his consent to take the chance of injury therefrom." (citation and quotation marks omitted)). The defense of assumption of risk "[is] affirmative and require[s] a showing on the part of the defendant to be considered at all; and to prevail as a matter of law, . . . it must plainly appear from the evidence that a reasonable mind could draw no other inference." *Bruce v. Flying Service*, 231 N.C. 181, 188, 56 S.E.2d 560, 564 (1949). This Court has held that, before an employee will be treated as having assumed the risks of his employment, he "must (or reasonably should) have been aware of the dangers involved and, in addition, must (or reasonably should) have appreciated the danger and risk connected with the [] conditions leading to his injury; *and [] in case of any doubt the question is ordinarily one for the jury.*" *May v. Mitchell*, 9 N.C. App. 298, 303-04, 176 S.E.2d 3, 7 (1970) (citation and quotation marks omitted) (emphasis in original).

Here, Defendant's arguments in support of the assumption of risk defense are not materially distinguishable from its arguments concerning Plaintiff's ability to state a claim for relief. Defendant argues it is entitled to prevail based on the defense of assumption of risk because Plaintiff "took part in the blasting activity as an employee of the blasting company . . . performing work at the [construction] site[]" and because "Plaintiff[]'s scope of work included him being in proximity to blasts."

Again, Defendant does not cite any North Carolina case law in support of its argument that Plaintiff's complaint "makes it clear that Plaintiff[] assumed the risk associated with blasting and therefore he cannot bring a strict liability claim against [Defendant]."

As in *Vecellio*, we find it unnecessary to reach the question of whether, as a general matter, assumption of risk is available as a defense to a strict liability claim arising from an ultrahazardous activity. The mere facts that Plaintiff was employed by a company whose services included blasting, and that he came "within [] range of the blasting activity" on the date of his injuries, are insufficient to establish *as a matter of law* that Plaintiff "assumed the risks" of blasting. According to Plaintiff's complaint, Plaintiff was not employed as a blaster and, immediately prior to the blast that caused his injuries, he believed he was located at a safe distance from the blast. Based on the facts alleged in Plaintiff's complaint, we cannot say whether proximity to blasting was within Plaintiff's "scope of work;" whether Plaintiff "took part" in the blast that resulted in his injuries; or whether it was reasonable for Plaintiff to rely upon the assurances of the blaster-in-charge about being at a safe distance from the blast. Even assuming *arguendo* that the defense of assumption of risk can apply to strict liability claims for blasting, we are not persuaded that Plaintiff's complaint *clearly shows* Plaintiff had actual or constructive knowledge of the risks of blasting,

or that he consented to assume those risks.[3] *See Andrews v. Elliot*, 109 N.C. App. 271, 275, 426 S.E.2d 430, 432 (1993) (reversing 12(b)(6) dismissal of plaintiff's complaint, where "plaintiff adequately alleged the essential elements of a claim for defamation *per se*," and "plaintiff's complaint on its face [did not] disclose[] in defendant's favor the affirmative defense of absolute or qualified privilege."); *cf. Holleman v. Aiken*, 193 N.C. App. 484, 497, 668 S.E.2d 579, 588 (2008) (affirming 12(b)(6) dismissal of plaintiff's libel claim based on the defense of truthfulness, because "from plaintiff's own complaint it [was] clear that some of the alleged defamatory statements [were] true.").

"We emphasize that our holding addresses the pleading stage only. We cannot predict whether a developed record will support [Plaintiff's] allegations[.]" *Fussell*, 364 N.C. at 228, 695 S.E.2d at 441. We hold only that Plaintiff's complaint, construed liberally, states a strict liability claim for blasting-related injuries "sufficient to withstand a motion to dismiss filed pursuant to Rule 12(b)(6)." *Id.* at 228, 695 S.E.2d at 442. In *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970), our Supreme Court discussed the concept of foreseeable risk as a limit on a defendant's liability for

---

[3] We observe our Supreme Court has held that "assumption of risk is not available as a defense to one not in a contractual relationship to the plaintiff." *McWilliams v. Parham*, 269 N.C. 162, 166, 152 S.E.2d 117, 120 (1967); *see also Clark v. Freight Carriers,* 247 N.C. 705, 709, 102 S.E.2d 252, 255 (1958) (finding that, where there was "no allegation in the pleadings tending to show any contractual relationship between the plaintiff and the [] defendants, the doctrine of assumption of risk [was] not available as a defense." (citations omitted)).

negligence. The *Sutton* Court concluded that, although the plaintiff's complaint alleged facts that *seemed to suggest* the absence of foreseeable risk on the part of the defendants, the Court

> [could not] say on the basis of the 'bare bones pleadings' that [the] plaintiff cannot prove otherwise, or that he can prove no facts which would entitle him to recover from [the] defendants . . . for the damages resulting from the [incident alleged]. To dismiss the action now would be "to go too fast too soon." This case is not yet ripe for a determination that there can be no liability as a matter of law.

277 N.C. at 108, 176 S.E.2d at 169 (citations omitted). In the present case, we likewise find it "too early in [] [P]laintiff's action for us to say to a certainty that [] [P]laintiff is entitled to no relief under any set of facts he might prove in support of his claim." *Boston*, 73 N.C. App. at 460, 326 S.E.2d at 106.

## III. Conclusion

Considering our limited precedent on strict liability for blasting and the lack of North Carolina case law involving the specific factual circumstances presented here, we cannot say "it appears *beyond doubt* that [] [P]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Hull v. Floyd S. Pike Electrical Contractor,* 64 N.C. App. 379, 380, 307 S.E.2d 404, 406 (1983) (citation omitted) (emphasis added). Accordingly, we conclude the trial court improperly dismissed Plaintiff's strict liability claim against Defendant. We therefore reverse

the trial court's order granting Defendant's motion to dismiss and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Judge STROUD concurs.

Judge MURPHY concurs in result only.